## STATE

### v.

### Edward C. RODRIQUEZ.

### No. 98–307–C.A.

Supreme Court of Rhode Island.

June 23, 1999.

Jane M. McSoley, Aaron L. Weisman, Providence, for Plaintiff.

Paula Lynch Hardiman, Paula Rosin, Providence, for Defendant.

Present WEISBERGER, C.J., and LEDERBERG, BOURCIER, FLANDERS, and GOLDBERG, JJ.

## OPINION

PER CURIAM.

The defendant, Edward C. Rodriquez (Rodriquez), has appealed from the entry of a judgment of conviction of robbery following a guilty verdict by a jury. This case came before the Supreme Court on May 21, 1999, pursuant to an order directing the parties to show cause why the issues raised by this appeal should not be summarily decided. After hearing the arguments of counsel for the parties and reviewing their memoranda, we are of the opinion that cause has not been shown. Therefore, the appeal will be decided at this time.

In the early morning hours of July 21, 1995, Guy Gulutz (Gulutz) was working as a clerk at the DB Mart convenience store on West Shore Road in Warwick, Rhode Island. At approximately 1 a.m., while Gulutz was writing out a void slip for a recent transaction, a man entered the store and placed his hand upon the counter. At trial, Gulutz testified that he looked up and saw a man whose face was covered by a bandanna holding what he thought was a knife. He recalled that the man wore a white shirt, jeans, and a painter's cap. The man jumped over the counter and ordered Gulutz to "get on the floor," telling him that if he did so, he would not "get hurt." The robber unsuccessfully attempted to open the cash registers, at which time his bandanna slipped off, exposing his face. The man instructed Gulutz to rise and help him. Gulutz stood next to the robber and later testified that he looked directly at the robber both before and after opening the register. He then returned to his position on the floor, located within three to five feet of the robber.

Next, the robber asked Gulutz where the safe was. After Gulutz so indicated, the robber removed a safety box containing about $400 that had been marked by an employee earlier that day and then left the store, warning Gulutz to count to 100 before moving. Gulutz testified that he counted to fifty, then crawled over to and pushed the police-connected panic button. Gulutz estimated that the robbery lasted seven to ten minutes and that he was able to see the robber's face for approximately three minutes. The police arrived quickly, and Gulutz described the robber to them as a young Hispanic male, wearing a white shirt and jeans.

At trial, defendant took the stand in his own defense and insisted that he had not robbed the DB Mart. The defendant explained that he had spent the evening driving around Rhode Island and Massachusetts, buying and using drugs with a man named Tony Vega (Vega). At some point, according to defendant, Vega drove into the parking lot of the DB Mart convenience store, allegedly put on a white cap, exited the car, returned several minutes later holding a safety box and a weapon, and gave defendant some money and the weapon after instructing him to dispose of the weapon and meet him later. The defendant claimed he reluctantly rode off with the cash and weapon on a bicycle he had borrowed from a friend earlier that day and placed in the trunk of Vega's car. The defendant described Vega as being in his mid to late twenties, Hispanic, about 5'8" tall and slim. He said Vega had been wearing a white shirt and jeans.

At about 1 a.m. on July 21, 1995, Sergeant Scott Mancini (Mancini) of the Warwick Police Department received a radio broadcast that described a robbery at the DB Mart and the robber. He began to canvas the area in his police cruiser, and observed defendant riding a bicycle. Mancini later testified at trial that the man on the bicycle fit the description of the suspect. He stated that defendant was wearing a blue and white shirt. Mancini signaled to defendant to come to a stop but defendant accelerated. The pursuit ended when Mancini tackled defendant and placed him in hand restraints. A second police officer arrived at the scene. When defendant was searched, the police discovered a steel saw blade and about $314 in crumpled currency on his person. At trial, Mancini mentioned that although he searched the area after defendant was taken into custody, he did not find the safety box, a painter's hat, a bandanna, or a white shirt.

The defendant was transported in a police cruiser to the DB Mart, where he was removed from the cruiser. Gulutz testified that he stepped outside the store and observed the suspect from a distance of fifteen to twenty feet in the "well-lit" parking lot of the DB Mart. At the "show-up,"[1] Gulutz identified defendant as the individual who had robbed him approximately eight to ten minutes earlier but noted that he was wearing a different shirt. Gulutz also identified the weapon found on defendant as the weapon used in the robbery and the marked money found on defendant as some of the money that had been stolen.

On September 14, 1995, defendant was charged by indictment with one count of robbery in violation of G.L.1956 § 11–39–1. The defendant took the stand and on cross-examination, admitted to having prior convictions for assault with a dangerous weapon and robbery. The trial justice gave the jury a cautionary instruction, explaining that they could consider defendant's prior convictions solely for purposes of impeachment. The jury trial ended with a guilty verdict on March 12, 1996. Subsequently, the trial justice granted defendant's motion for a new trial based on evidence that the jury had been improperly influenced. The state filed a petition for certiorari, and this Court reversed and remanded the case for sentencing. *State v. Rodriquez*, 694 A.2d 1202 (R.I.1997). On September 8, 1997, defendant was sentenced to forty-years incarceration with fifteen years to serve, twenty-five years suspended, and twenty-five years probation. The defendant filed a timely notice of appeal.

The defendant raised three issues on appeal: (1) the trial justice erred in refusing to give the jury an instruction on the allegedly lesser included offense of compounding a felony; (2) the show-up at the

---

1. A show-up is a one-to-one confrontation between a suspect and a witness. Black's Law Dictionary 1380 (6th ed.1990). Show-ups are often contrasted with lineups, in which a suspect is presented to a witness for identification along with others with similar physical characteristics. *Id.* at 929.

DB Mart after the robbery was impermissibly suggestive; and (3) the trial justice abused her discretion by admitting defendant's past convictions.

## Instruction on a Lesser Included Offense

The defendant claimed that compounding a felony is a lesser included offense of robbery, and therefore that the trial justice erred by refusing to so instruct the jury. The state argued that compounding a felony is not a lesser included offense of robbery, and that even if it were, the evidence presented at trial was not sufficient to warrant such an instruction.

■ "It is well settled that a criminal defendant is entitled to an instruction on a lesser included offense if such an instruction is warranted by the evidence." *State v. Figueras*, 644 A.2d 291, 294 (R.I.1994); *see also State v. Campbell*, 691 A.2d 564, 572 (R.I.1997). Such an instruction is necessary, however, only if an "actual and adequate dispute exists" regarding the element that distinguishes the greater and lesser charges. *Figueras*, 644 A.2d at 294. The threshold question here is whether compounding a felony is indeed a lesser included offense of robbery.

■ A lesser included offense is "[o]ne that does not require proof of any additional element beyond those required by the greater offense." Black's Law Dictionary 902 (6th ed.1990). Because our statute establishing the penalties for robbery, G.L.1956 § 11–39–1, fails to set forth the elements of the crime, the common law definition is applicable. *State v. Shepard*, 726 A.2d 1138, 1140 (R.I.1999). This Court defines robbery as "the felonious taking of money or goods of any value from the person of another, *or in his presence*, against his will, by violence, or putting him in fear." *Id.*[2] Compounding a felony is defined in G.L.1956 § 11–1–5, which provides:

"**Compounding felony.** — Every person who shall be convicted of having knowledge of the commission of any felony offense, and of taking any money, gratuity, or reward, or any engagement therefor, upon an agreement or understanding, express or implied, to compound or conceal that crime or offense, or not to prosecute therefor, or not to give evidence relative thereto, shall be imprisoned not exceeding five (5) years or be fined not exceeding five thousand dollars ($5,000), provided that the person shall not be subject to a fine or imprisonment exceeding the felony pertaining to this offense."

In the instant case, it is clear that a conviction of compounding a felony would have required proof of elements quite distinct from those required to convict defendant of robbery. Similarly, a conviction of robbery would have required proof of elements entirely different from those required to prove compounding a felony. In *State v. Grabowski*, 644 A.2d 1282, 1285 (R.I.1994), this Court, relying on *Blockburger v. United States*, 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306, 309 (1932), held that "the accused may be prosecuted for each offense only if each crime requires 'proof of an element distinct from the other.'" *Grabowski*, 644 A.2d at 1285 (quoting *State v. Malouin*, 433 A.2d 176, 178 (R.I.1981)). Clearly, under this standard, compounding a felony is not a lesser included offense of robbery.

■ In addition, in determining what constitutes a lesser included offense, this Court has adhered to the so-called "inherent relationship" test. *See State v. Yates*, 571 A.2d 575, 577 (R.I.1990) (defining a lesser included offense as one inherently related to the greater offense, such that the two offenses relate to the protection of the same interests). The lesser and greater offenses must also "be so related that in

---

**2.** In *State v. Robalewski*, 418 A.2d 817, 820–21 (R.I.1980), we defined the word "felonious" as requiring the intention to deprive the victim wholly and permanently of the property taken.

the general nature of these crimes, though not necessarily invariably, proof of the lesser offense is necessarily presented as part of the showing of the commission of the greater offense." *State v. Dordain,* 566 A.2d 942, 947 (R.I.1989) (quoting *United States v. Whitaker,* 447 F.2d 314, 319 (D.C.Cir.1971)). The defendant argued that the inherent relationship between robbery and compounding a felony was that after a person commits a robbery, he or she might engage another party to dispose of the evidence. We do not agree that the potential relationship between robbery and compounding a felony constitutes the inherent relationship necessary to require an instruction on a lesser included offense. The law prohibiting robbery and the law prohibiting compounding a felony clearly do not protect the same interests. The prohibition on robbery protects society's interest in preventing the taking of things of any value from a person, while the law against compounding a felony protects society's interest in preventing parties from taking compensation in exchange for concealing felonious behavior. An inherent relationship requires a much closer connection between the greater and lesser offenses. Moreover, proof of compounding a felony is not generally presented as part of the proof of robbery. In the instant case, the state presented no evidence to prove that defendant compounded a felony. Therefore, we are of the opinion that the relationship between robbery and compounding the felony in this case is not so close as to be deemed inherent. Therefore, the trial justice was correct in refusing to instruct the jury on compounding a felony.

### Suggestive Identification

■ The defendant next argued that Gulutz's identification of defendant outside the convenience store was unnecessarily suggestive and not otherwise reliable and that *its admission* violated defendant's due process rights.

Before trial, on a motion to suppress, defendant had argued that the out-of-court identification procedure was unnecessarily suggestive because when the police brought defendant to the DB Mart in a cruiser, they may have told Gulutz that they had a "suspect" for him to view. The defendant argued that the identification was not independently reliable because: (1) for part of the robbery, the perpetrator's face had been covered by a bandanna, (2) Gulutz's initial description of the robber's shirt was inconsistent with what defendant was wearing at the time of his capture, and (3) Gulutz viewed defendant from a distance for only a very short time before making his identification. The trial justice, however, disagreed and noted that the show-up occurred "so soon after the robbery that it was totally appropriate" and that Gulutz "struck the [c]ourt as someone who had a very accurate memory of what transpired[.]" The trial justice consequently denied defendant's motion to suppress.

"Even though [show-up identification procedures] have been widely condemned, both the United States Supreme Court and [this Court] have refused to create a per se exclusionary rule barring the use of evidence of out-of-court identifications in situations in which suspects are shown individually to witnesses for the purpose of identification." *State v. Turner,* 561 A.2d 869, 871 (R.I.1989). Because an inflexible rule prohibiting such procedures would "frustrate rather than promote justice," *id.,* we review an identification that may be suggestive to ascertain whether it might be reliable despite its potentially suggestive nature. *State v. Camirand,* 572 A.2d 290, 293 (R.I.1990).

"When determining whether identification procedures employed violated a defendant's right to due process of law the court must employ a two-step procedure. First the court must consider the question of whether the procedures used in the identification were unnecessarily suggestive. If any of the procedures

are found to have been suggestive, in the second step there must be a determination of whether the identification lacks independent reliability despite the suggestive nature of the identification procedure." *Id.*

This Court employs a "totality-of-the-circumstances test to determine whether a suggestive-identification procedure is reliable or inclined to give rise to a substantial likelihood of irreparable misidentification." *Turner,* 561 A.2d at 871. Five factors are considered, including: the opportunity of the witness to observe the criminal during commission of the crime; the level of attention paid by the witness; the accuracy of the witness's description of the criminal; the witness's degree of confidence in the identification at the time of confrontation; and the amount of time elapsed between commission of the crime and the confrontation. *Neil v. Biggers,* 409 U.S. 188, 199–200, 93 S.Ct. 375, 382, 34 L.Ed.2d 401, 411 (1972). These factors are weighed against the "corrupting effect" of a suggestive identification procedure. *In re Richard L.,* 479 A.2d 103, 106 (R.I.1984).

In *State v. Thompson,* 683 A.2d 378 (R.I.1996), we upheld a trial justice's denial of the defendant's motion to suppress a show-up identification, noting that the witness, a victim of a carjacking, "had an opportunity to view the perpetrator at the time of the crime, gave a description to police immediately after the incident, identified defendant * * * shortly after the criminal incident, and never wavered in his certainty that defendant was the perpetrator." *Id.* at 379.

In the instant case, Gulutz had sufficient opportunity to view the criminal during the robbery when the bandanna slipped out of place and exposed the robber's face. Additionally, it appears that Gulutz paid close attention to the robber during the incident. Although Gulutz originally described the robber as wearing a white shirt, when in fact defendant was seized wearing a blue and white shirt, Gulutz provided a fair description of the robber's gender, age, ethnic background, and other attire. The defendant called attention at trial to the fact that while Gulutz initially described the robber as "slim," he later referred to defendant as having an "athletic build;" but these two descriptions do not necessarily conflict. At the time of the show-up, Gulutz positively identified defendant as his assailant and showed confidence in his identification. A final and most convincing fact is that a mere eight to ten minutes elapsed between the time of the robbery and the confrontation. The trial justice was persuaded that the identification was reliable, as are we. The out-of-court identification possessed several strong indicia of reliability, which, when balanced against the effect of a suggestive procedure, persuade us that the trial justice was correct to deny defendant's motion to dismiss. Consequently, we hold that even assuming arguendo that the identification was unnecessarily suggestive, its reliability was sufficient to render the in-court identification admissible. The trial justice, therefore, was correct in declining to exclude the in-court identification.

### Prior Convictions

■ Finally, defendant argued that the trial justice abused her discretion by admitting defendant's past convictions, which defendant contended were more prejudicial than probative. "This Court will not disturb a trial justice's finding regarding the admissibility of prior conviction evidence for impeachment purposes unless our review of the record reveals an abuse of discretion on the part of the trial justice." *State v. Morel,* 676 A.2d 1347, 1357 (R.I.1996).

At trial, the state cross-examined defendant about his prior convictions. The defendant admitted to having been convicted of "breaking and entering of a home with a knife with the intent to commit armed-robbery," assault with the intent to rob, and "assault with a deadly weapon, to wit, a knife," in June of 1982. Additionally, he admitted to having been convicted of "as-

sault with a dangerous weapon, to wit, a sharp instrument," and "assault with intent to commit murder with a sharp instrument" on June 2, 1986. Immediately thereafter, the trial justice explained to the jury that evidence of defendant's convictions was presented solely to aid in evaluating defendant's credibility and should not be considered proof that defendant acted in conformity with any of his prior acts. The trial justice repeated this cautionary instruction in her charge to the jury.

Rule 609(a)of the Rhode Island Rules of Evidence provides that a witness's credibility may be impeached by eliciting from the witness evidence of previous convictions. Rule 609(b), however, states that "[e]vidence of a conviction under this rule is not admissible if the court determines that its prejudicial effect substantially outweighs the probative value of the conviction." In the instant case, the trial justice did not find that the prejudicial effect of defendant's convictions substantially outweighed their probative value. In denying defendant's motion to exclude his prior convictions, the trial justice explained that in her opinion, the rules permitted admission of defendant's previous convictions so long as the jury was instructed, immediately after the evidence was introduced and again in the jury charge, that the evidence could be considered solely for purposes of evaluating defendant's credibility. With these instructions, the trial justice adequately delineated the limited purpose for which the evidence was admitted. Consequently, she did not abuse her discretion by admitting defendant's prior convictions.

Further, in *State v. Aponte,* 649 A.2d 219, 223–24 (R.I.1994), this Court affirmed a trial justice's denial of the defendant's motion to exclude evidence of his prior conviction where the trial justice gave two cautionary instructions, the first after the defendant admitted his previous conviction and the second in the court's charge to the jury. The trial justice in the instant case likewise provided the jury with an initial cautionary instruction limiting its consideration of the evidence of the defendant's prior convictions and repeated the cautionary instruction in her charge before deliberations. We therefore conclude that the trial justice did not abuse her discretion in admitting evidence of the defendant's prior convictions.

For the foregoing reasons, we deny and dismiss the defendant's appeal and affirm the judgment of the Superior Court to which we remand the papers in this case.