## STATE

v.

## Irving BRIGGS.

No. 99–263–C.A.

Supreme Court of Rhode Island.

Dec. 19, 2001.

Jane M. Mcsoley, Aaron L. Weisman, Providence, for Plaintiff.

Catherine Gibran, Providence, for Defendant.

Present: WILLIAMS, C.J., LEDERBERG, BOURCIER, FLANDERS, and GOLDBERG, JJ.

## OPINION

WILLIAMS, Chief Justice.

This case came before the Court pursuant to the appeal of the defendant, Irving Briggs (defendant), who was convicted of four counts of first-degree sexual assault and one count of second-degree robbery after a Superior Court jury trial. The defendant, appearing at a portion of the trial *pro se,* now contends that he was deprived of his Sixth Amendment right to counsel. In addition, he argues that he was deprived of his Sixth Amendment right to a fair trial and that the trial justice erred by failing to instruct the jury on the lesser included offense of larceny. Because the trial justice made a series of prejudicial comments during the trial that impermissibly affected the jury's ability to assess the defendant's culpability, we grant the defendant's request for a new trial. However, because of our separate disposition of the robbery conviction, a new trial is granted only for the sexual assault charges. The facts pertinent to this appeal are as follows.

### I

### Facts and Travel

On December 28, 1991, defendant attended a party at the apartment of Michelle Albin (Albin). Albin's apartment was on the first floor of a three-story tenement at 12 Chalapa Street in Woonsocket. That night, Sandra Cardillo (Cardillo) was in her apartment on the third floor, above Albin's residence. At trial, Cardillo said that she received an unexpected visitor (defendant), who came into

her apartment, stole money, and raped her several times.

After the alleged sexual assault, Cardillo summoned her boyfriend, who, upon arrival, called the police. The defendant was arrested and charged with four counts of first-degree sexual assault, one count of entering a dwelling with intent to commit sexual assault, and one count of robbery. An eight-day trial began in the Superior Court on January 6, 1997. The defendant chose to represent himself during the first two days of the trial. After realizing the truth of Abraham Lincoln's insightful adage that "he who represents himself has a fool for a client," defendant agreed to be represented by an attorney for the rest of the trial.

The jury convicted defendant on all counts, except entry of a dwelling house with felonious intent. Following the verdict, the trial justice denied defendant's motion for new trial. The trial justice sentenced defendant to fifty years in prison at the Adult Correctional Institutions (ACI) for each count of sexual assault in the first degree, with thirty-five years to serve and fifteen years suspended with probation. The defendant also was sentenced to thirty years in prison at the ACI for the count of robbery in the second degree. All sentences were to run concurrently. The defendant appealed.

## II

### Sixth Amendment Arguments

### Right to a Fair Trial

The defendant asserts that the trial justice made a series of improper comments

during the trial, directed toward both himself and his attorney, which deprived defendant of his Sixth Amendment right to a fair trial. We agree.

"Improper comments by a trial justice may be grounds for a new trial." *State v. Jackson*, 752 A.2d 5, 11 (R.I.2000) (citing *State v. Wiley*, 567 A.2d 802, 805 (R.I. 1989)). Here the improper comments were made throughout the trial. We address the most serious comments *seriatim*.

■ During the first two days of trial, in front of the jury, the trial justice expressed his frustration with defendant's lack of procedural knowledge.[1] For example, the trial justice made inaccurate comments in front of the jury about defendant's alleged propensity for hiring and firing numerous attorneys. The trial justice stated:

> "Don't test me. You want to be your own lawyer. The State of Rhode Island, as I told you before, furnished you with five separate lawyers. You fired every single one of them because you thought you could do a better job. Now you're doing it. You will follow the Rules of Evidence like any other lawyer."[2]

The trial justice repeated this sentiment on two additional occasions. Even though the trial justice made these remarks after defendant's improper attempts to introduce evidence or impeach a witness, these comments were unnecessary and conveyed to the jury the trial justice's hostility toward defendant.

---

1. The defendant's troubles began during his opening statement, when he made many objectionable statements to the jury. For example, defendant stated: "I feel that you must know that I believe that I was forced into representing myself" and "I don't know how I'm going to do this but I took it upon myself to try this."

2. When the trial justice made this remark, defendant had been represented by only four attorneys. Furthermore, one attorney, a public defender, was not replaced at defendant's request, but was reassigned to another case.

The trial justice's demeanor did not change when defense counsel entered his appearance. While defense counsel cross-examined Cardillo, the following dialogue occurred in front of the jury:

"THE COURT: Did you—

"[COUNSEL]: I'm sorry, your Honor.

"THE COURT: Did you ever play basketball?

"[COUNSEL]: Yes.

* * *

"THE COURT: You know about a shot put?

"[COUNSEL]: Yes, your honor.

"THE COURT: I'm going to start executing one here.

"[COUNSEL]: Very well, your Honor.

"THE COURT: I hope I make my point."

This dialogue came while defense counsel attempted to rephrase a question. The trial justice made additional comments that undermined defense counsel's competency in front of the jury. During cross-examination, the trial justice asked the witness ˙ "[d]o you understand that question?" in response to defense counsel's arguably confusing interrogatory. When the witness replied in the affirmative, the trial justice stated "[y]ou're better than I am."

At another point in the trial, the trial justice admonished defense counsel that his questioning of a witness was too lengthy. Shortly after defense counsel began to cross-examine the witness, the trial justice became impatient. The trial justice stated:

"I only have one and a half years to go before I retire, so please get your question in there before, and I don't get one hundred percent pension either. Don't believe what you read in the paper and I have high hopes this case will been [sic] over by then."

The record reflects that this comment came after only seven pages of transcript, while the transcript of the prosecutor's examination of the same witness spanned over thirteen pages.

Toward the end of the trial, the trial justice engaged in improper questioning during defendant's direct examination. The trial justice interjected as follows:

"[COUNSEL]: What did you do with the quarters?

"[DEFENDANT]: We still had the quarters. I didn't spend those until the next morning.

"[COUNSEL]: What did you do with the cash?

"[DEFENDANT]: We spent quite a bit of it. We bought beer. We bought a couple of eight balls of cocaine.

"THE COURT: Where did you buy them from?

"[DEFENDANT]: Bobby and Adrian gets them from Morin Heights. Morin Heights is right around there so he buys his drugs from Morin Heights. Who, I don't know who he gets it from.

"THE COURT: That's convenient."

"This [C]ourt has recognized that it is within the ambit of a trial justice's discretion to question a witness when he or she deems it necessary and proper to do so." *State v. Evans,* 618 A.2d 1283, 1284 (R.I. 1993) (citing *State v. Giordano,* 440 A.2d 742, 745 (R.I.1982)). "When a trial justice chooses to engage in questioning a witness, he or she should do so only if his or her question or questions will elicit the truth and will clarify matters that may be otherwise confusing in the minds of the jurors." *Id.*

In this instance, the trial justice's interjection could have been construed by the jury as an attack on defendant's credibility. By referring to defendant's failure to know the drug source's name as "conve-

nient," the trial justice could have been suggesting that he did not believe defendant. Regardless, this questioning did not serve to clarify a confusing matter for the jury since the issue of who defendant purchased narcotics from was not before the jury.

After review of the record, we conclude "that the tenor of the trial justice's questioning contained prejudicial influences. As such, we [conclude] that the trial justice's questioning therefore impinged on the province of the jury as a factfinding body in assessing the defendant's culpability." *Evans*, 618 A.2d at 1284. While each comment taken separately might not rise to the level of a Sixth Amendment violation, reviewed altogether, the trial justice's comments prevented the jury from engaging in its independent fact-finding role.

■ Relying on our decision in *State v. Kryla*, 742 A.2d 1178, 1186 (R.I.1999), the state argues that the trial justice's comments were not sufficiently prejudicial to warrant a new trial. We caution against relying on *Kryla* for the proposition that improper judicial comments do not warrant a new trial. Our holding was specific to the facts of that case. In *Kryla*, we held that the trial justice's "comment crossed the bounds of impartiality," but that "the comment was not sufficiently prejudicial to warrant a mistrial." *Id.*[3] The comment did not inflame the jury to the degree that the trial justice was required to pass the case because of the existence of overwhelming evidence of defendant's guilt, including an admission of culpability which offset the effect of the comment on the jury. *Id.* at 1185–86. In the instant case, the evidence of defendant's guilt was not of the same degree as that in *Kryla*. Thus, a new trial is warranted.

The state also argues that defendant's complaint was not properly preserved for failure to raise a timely or specific objection. "According to our well-settled 'raise or waive' rule, issues that were not preserved by a specific objection at trial 'sufficiently focused so as to call the trial justice's attention to the basis for said objection, may not be considered on appeal.'" *State v. Oliveira*, 774 A.2d 893, 907 (R.I.2001) (quoting *State v. Toole*, 640 A.2d 965, 972–73 (R.I.1994)). In the instant case, this Court does not intend to disturb this long-standing raise-or-waive rule of procedure.

■ However, we have said that absent a timely request for a cautionary instruction, we may still grant a new trial "if it [is] determined that such request for cautionary instruction would have *been futile or any attempt to palliate the prejudice would have been ineffective.*" *State v. Lemon*, 478 A.2d 175, 181 (R.I.1984) (citing *State v. Anil*, 417 A.2d 1367, 1373 (R.I. 1980)). (Emphasis added.) In the instant case, the record reflects that the trial justice's response to defense counsel's single request for a mistrial chilled any potential objections or motions to pass the case. Shortly after defense counsel entered his appearance, he requested that the trial justice declare a mistrial because of the trial justice's prejudicial comments toward defendant. The trial justice responded as follows:

"THE COURT: You want to scandalize the [c]ourt because your client said he was prejudiced? Is that what you are saying to me as an officer of the [c]ourt?

"[COUNSEL]: I'm not trying to scandalize—

"THE COURT: Yes, you are.

---

**3.** The trial justice stated "[Defense's expert witness has] *been speculating all the time she's been on the stand.*" *State v. Kryla*, 742 A.2d 1178, 1186 (R.I.1999).

"[COUNSEL]: I'm trying to bring out the fact that [defendant] was prejudiced."

■ At this point, any further request for a cautionary instruction would have been futile. Furthermore, any attempt to palliate the prejudice would have been ineffective because of the impact already made on the jury. The state submits that the trial justice cured any prejudice by twice cautioning the jury against "glean[ing]" anything from what he had said or from his demeanor. However, that part of the trial justice's instructions came after a trial replete with continuous prejudicial remarks as a result of his apparent frustration with defendant.

We conclude that because defendant was deprived of his Sixth Amendment right to a fair trial, he is entitled to a new trial on four counts of first-degree sexual assault.

### Valid Waiver of Counsel

The defendant argues that during the pretrial hearing, the trial justice failed to make a thorough inquiry to ensure that he made a "knowing and intelligent" waiver of his right to counsel. We disagree.

The Sixth Amendment to the United States Constitution provides that "[i]n all criminal prosecutions, the accused shall enjoy the right to *** have the Assistance of Counsel for his defence." The Sixth Amendment guarantees a defendant's "right to represent himself or herself in a criminal trial." *State v. Gatone*, 698 A.2d 230, 240 (R.I.1997) (citing *Faretta v. California*, 422 U.S. 806, 807, 95 S.Ct. 2525, 2527, 45 L.Ed.2d 562, 566 (1975)). In evaluating the validity of a purported waiver, "[w]e heed the Supreme Court's teaching that our waiver analysis must be pragmatic and directed to the 'particular stage of the proceedings in question.'" *Lopez v. Thompson*, 202 F.3d 1110, 1119 (9th Cir. 2000) (quoting *Patterson v. Illinois*, 487

U.S. 285, 298, 108 S.Ct. 2389, 2398, 101 L.Ed.2d 261, 276 (1988)). This approach should be evaluated by an examination of the "totality of the circumstances." *State v. Spencer*, 783 A.2d 413, 413 (R.I.2001). A defendant may represent himself by waiving "the right to counsel and appear *pro se* if his choice to do so is knowingly and intelligently made." *State v. Bruyere*, 751 A.2d 1285, 1287 (R.I.2000). A waiver is valid only if the defendant "*knows what he [or she] is doing and his choice is made with eyes open.*" *State v. Chabot*, 682 A.2d 1377, 1380 (R.I.1996) (quoting *Faretta*, 422 U.S. at 835, 95 S.Ct. at 2541, 45 L.Ed.2d at 582). "An accused should therefore 'be made aware of the dangers and disadvantages of self-representation.'" *Id.* The trial justice "need not make any assessment of the extent of the defendant's technical legal knowledge in determining the defendant's knowing exercise of the right to defend himself." *State v. Costa*, 604 A.2d 329, 330 (R.I.1992) (citing *Faretta* 422 U.S. at 836, 95 S.Ct. at 2541, 45 L.Ed.2d at 582).

■ Prior to trial, defendant requested to represent himself seven times. The trial justice undertook a lengthy conversation with defendant about the difficulties of *pro se* representation. The defendant told the trial justice that he understood the potential punishment for first-degree sexual assault. The trial justice then inquired about defendant's ability to prepare for the trial, to which defendant acknowledged he would be ready. Finally, the trial justice inquired into the status of defendant's previous legal representation, to which defendant reiterated that he did not want a public defender.

Further, the trial justice warned defendant that he was making "a very, very big mistake." The trial justice informed defendant that opposing counsel was a very skilled attorney. The trial justice, therefore, suggested that defendant keep the

most recent appointed counsel, stating that "[he] is a very experienced lawyer, and he'll represent you." Finally, the trial justice reminded defendant of the "old adage *** [that] he who represents himself has a fool for a client."

■ The defendant argues that his waiver was invalid because the trial justice failed to follow the six factors outlined in *Chabot* for the determination of defendant's "knowing *** intelligent, and *** voluntary waiver of his right to counsel." *Chabot,* 682 A.2d at 1380. Those six factors are:

"(1) the background, the experience, and the conduct of the defendant at the hearing, including his age, his education, and his physical and mental health; (2) the extent to which the defendant has had prior contact with lawyers before the hearing; (3) the defendant's knowledge of the nature of the proceeding and the sentence that may potentially be reimposed; (4) the question of whether standby counsel has been appointed and the extent to which he or she has aided the defendant before or at the hearing; (5) the question of whether the waiver of counsel was the result of mistreatment or coercion; and (6) the question of whether the defendant is trying to manipulate the events of the hearing." *Id.* (citing *United States v. Fant,* 890 F.2d 408, 409–10 (11th Cir.1989)).

While not mandatory, the factors set forth in *Chabot* may be used as a guide in determining a valid waiver of counsel. *Spencer,* 783 A.2d at 413. Although the trial justice did not expressly analyze the *Chabot* factors, an examination of the total-ity of the circumstances demonstrates that defendant validly waived his right to counsel. The record shows defendant wished to place the outcome of the trial in his own hands, fully aware of the risks involved. The trial justice's suggestion that defendant retain counsel was met with continuous resistance. We are satisfied defendant "knowingly and intelligently" waived his right to counsel.[4]

## III

### Instruction on Lesser Included Offense

■ The defendant asserts that the trial justice erred by failing to instruct the jury on the charge of larceny, a lesser included offense of robbery. The state concedes that defendant was entitled to the instruction, but that the remedy is a larceny conviction rather than a new trial. We agree.

"General Laws 1956 § 8–2–38 requires the trial justice to instruct the jury on the law to be applied to the issues raised by the parties." *State v. Lynch,* 770 A.2d 840, 846 (R.I.2001). "There is no requirement for particular words to be used in a charge." *Id.* (citing *State v. Mastracchio,* 546 A.2d 165, 173 (R.I.1988)). "The trial justice may instruct the jury in his or her own words as long as the charge sufficiently addresses the requested instructions and correctly states the applicable law." *Id.* (quoting *Mastracchio,* 546 A.2d at 173). "On review, [this Court] examine[s] the instructions in their entirety to ascertain the manner in which a jury *** would have understood them *** and *** review[s] challenged portions of jury instructions 'in

4. In addition, we reiterate that "experience has shown that in emergency situations standby counsel may be of assistance as consultants in legal matters." *State v. Bruyere,* 751 A.2d 1285, 1287 n. 1 (R.I.2000). "A trial [justice] may also terminate self-representation or appoint 'standby counsel'—even over the defendant's objection—if necessary." *Martinez v. Court of Appeal of California,* 528 U.S. 152, 162, 120 S.Ct. 684, 691, 145 L.Ed.2d 597, 607 (2000) (quoting *Faretta v. California,* 422 U.S. 806, 834 n. 46, 95 S.Ct. 2525, 2541 n. 46, 45 L.Ed.2d 562, 581 n. 46 (1975)).

the context in which they were rendered.' " *State v. Krushnowski*, 773 A.2d 243, 246 (R.I.2001) (quoting *State v. Gordon*, 508 A.2d 1339, 1349 (R.I.1986)).

"It is well settled that a criminal defendant is entitled to an instruction on a lesser included offense if such an instruction is warranted by the evidence." *State v. Rodriquez*, 731 A.2d 726, 729 (R.I.1999) (quoting *State v. Figueras*, 644 A.2d 291, 294 (R.I.1994)). However, this instruction is necessary "only if an 'actual and adequate dispute exists' regarding the element that distinguishes the greater and lesser charges." *Id.* "A lesser included offense is '[o]ne that does not require proof of any additional element beyond those required by the greater offense.' " *Id.* (quoting Black's Law Dictionary 902 (6th ed.1990)); *see also Blockburger v. United States*, 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306, 309 (1932); *State v. Grabowski*, 644 A.2d 1282, 1286 (R.I.1994).

■ Larceny is a lesser included offense of robbery. *See State v. Holley*, 604 A.2d 772, 774 (R.I.1992). Robbery is the "felonious and forcible taking from the person of another of goods or money to any value by violence or putting him in fear." *Id.* (quoting *State v. Pope*, 414 A.2d 781, 788 (R.I.1980)). Larceny is "essentially a wrongful taking without right and a carrying away of another's personal property with a felonious intent to steal." *Id.* (citing *State v. Smith*, 56 R.I. 168, 178–79, 184 A. 494, 499 (1936)). "By definition, robbery includes larceny because the robbery act requires a taking and a carrying away of another's property." *Id.* The distinguishing characteristic between robbery and larceny "is the [additional] element of force, violence, or intimidation in the taking of property." *Id.* (citing Annot. 58 A.L.R. 656 (1929)).

In this case there was an "actual and adequate dispute" concerning the existence of force. *Rodriquez*, 731 A.2d at 729. The defendant was entitled to the larceny instruction. However, the record reflects that the defendant took the stand and admitted to committing larceny. The defendant stated that while Cardillo was downstairs at Albin's apartment, he took some of Cardillo's money from her empty apartment. There is no dispute about the defendant's guilt on each of the larceny elements. Thus, we vacate the defendant's robbery conviction and remand the case to the Superior Court for entry of the larceny conviction and sentencing thereon. *See Holley*, 604 A.2d at 779.

### Conclusion

Accordingly, the defendant's appeal is sustained in part and denied in part and the judgment is vacated in part and affirmed in part. The case is remanded to the Superior Court for a new trial on four counts of first-degree sexual assault, entry of a conviction of larceny, and sentencing thereon.