**STATE**

**v.**

**Charles E. RANDALL.**

Nos. 2009–250–C.A., 2010–259–M.P.

Supreme Court of Rhode Island.

Dec. 2, 2011.

Aaron L. Weisman.

Lara E. Ewens.

**ORDER**

This case came before the Supreme Court on November 2, 2011, pursuant to an order directing the parties to appear and show cause why the issues raised in this appeal should not summarily be decided. The defendant, Charles E. Randall (defendant or Randall), appeals from an

adjudication by a Superior Court magistrate declaring him in violation of his probation in two cases.[1] The basis of the violation was the magistrate's finding that the defendant was not living at the address where he had registered as a Level III sex offender and that he failed to maintain contact with his probation officer. The hearing magistrate sentenced the defendant to serve the remaining seven-year sentence on one case and eight years on the second case—the sentences to be served concurrently. The defendant appeals the judgments in these cases—which have been consolidated on appeal—on two grounds. Randall contends that he was denied counsel at his violation hearing and that there was insufficient evidence upon which to conclude that he was not living at the address that he had registered with the police.

Having carefully reviewed the memoranda submitted by the parties and the arguments of counsel, we are satisfied that cause has not been shown; thus, the appeal may be decided at this time. We vacate the judgments and remand the case to the Superior Court.

### Facts and Travel

In 2000, defendant entered a plea of *nolo contendere* to two counts of second-degree sexual assault, and in 2004, he pleaded *nolo contendere* to breaking and entering. After serving his sentences for each offense, Randall was released from confinement and placed on probation. The defendant was required to register as a sexual offender with the local police department and to report as directed to his probation officer. Randall, who apparently was homeless after he was released from prison, reported his address as the Urban League Shelter (the shelter) at 208 Prairie Avenue, Providence, Rhode Island when he registered as a sex offender. In January 2008, the state filed a violation report pursuant to Rule 32(f) of the Superior Court Rules of Criminal Procedure alleging that Randall had neglected to maintain contact with his probation officer, that he was not staying at the shelter, and that his whereabouts were unknown.

In April 2008, defendant was apprehended and presented as a violator in Superior Court. The defendant appeared before the Superior Court numerous times concerning the question of who would represent him. He initially was represented by a public defender, who notified the court that Randall was attempting to secure the money to retain private counsel. In August 2008, the court record indicates that a conflict had arisen with the Public Defender's Office and that, although defendant had been provided with court-appointed counsel, he was requesting a new lawyer. The hearing magistrate appointed another attorney to represent him, prompting defendant to proclaim his belief that all public defenders and court-appointed attorneys had not adequately represented him or presented his "defensible nature" and "mitigate [*sic*] factors." On September 10, 2008, in a letter to the magistrate, defendant declared that, "I'm in conflict with every Public defender and Court appointed lawyer's [*sic*] who all are bribed by this State Government," and insisted that, "I'm very capable of representing myself * * * I'm ready to present my case * * * so please allow me to go forward as pro-se counsel." A competency evaluation was ordered; defendant refused to cooperate.[2]

---

1. In 2000, defendant was sentenced to ten years, three years to serve, for two counts of second-degree sexual assault; and in 2004, he was sentenced to ten years, two years to serve, for breaking and entering.

Time passed, and Randall again came before the hearing magistrate in October 2008. The hearing magistrate admonished defendant and remarked that his court-appointed attorney was "one of the most respected defense counsel in this state," and the magistrate stated that if she herself "were a criminal defendant, [she] would consider [herself] fortunate to have [the attorney] advocating on [her] behalf." The defendant, upset that he had not been present at a hearing on September 3—which proved uneventful—reiterated his belief that "the court terminated my right to proceed *pro se*." However, defendant also stated that he was still seeking private out-of-state counsel and that he wished to confer with that counsel before deciding whether to undergo the competency evaluation. The hearing magistrate granted counsel's motion to withdraw and granted yet another continuance so defendant could resume his quest to obtain suitable counsel.

When defendant again came before the hearing magistrate, in November 2008, he had failed to obtain private counsel. The hearing magistrate then attempted to reason with defendant to abandon what appeared to her to be an irrational distrust of court-appointed lawyers by pointing out to him how in the past when such counsel represented him they had achieved favorable results. The defendant persisted in addressing what he perceived to be past wrongs by appointed counsel. At this point, an obviously frustrated hearing magistrate told defendant that he must have private counsel present at the next court date or else proceed *pro se*. A week later, defendant appeared before the hearing magistrate without counsel and the hearing commenced. Significantly, there was no colloquy between the court and defendant concerning whether defendant was aware of the consequences of waiving counsel and did so with a full appreciation of his actions. *See State v. Bluitt*, 850 A.2d 83, 88 (R.I.2004) (describing the mandatory colloquy that the court must engage in with a defendant to ensure that waiver of counsel is knowing and intelligent).

When the hearing resumed on December 4, 2008, defendant's probation officer testified that defendant was not reporting to probation as required and was not staying at the shelter. The defendant disagreed with this testimony and argued that he had been residing at the shelter's overflow location in Cranston from November 2007 until January 2008, when the violation report was filed. However, when the hearing magistrate attempted to place defendant under oath to testify, defendant refused to take the oath. The hearing magistrate then determined, based on the shelter's records and the testimony of the probation officer, that defendant had violated the terms and conditions of his probation.

### Standard of Review

This Court reviews *de novo* a judicial officer's decision about whether a defendant knowingly and intelligently waived counsel, after giving deference to the judicial officer's findings of historical fact.

---

2. The competency evaluation appears to be a result of a letter that defendant penned to the magistrate in which he indicated that he had been instructed by the Lord to write to the magistrate "because [the Lord] knows the thoughts of all mankinds [*sic*] heart." He declared that "the Spirit of the Lord speaks through me; His message is on my lips."

The defendant concluded the letter with a prayer that the magistrate "will allow me to present my case, and voice my claims and be heard in your Court of law." The record discloses that defendant failed to cooperate with the competency evaluation and it was not completed.

*State v. Thornton,* 800 A.2d 1016, 1026 (R.I.2002) (citing *Simpson v. State,* 769 A.2d 1257, 1265–66 (R.I.2001)).

## Analysis

"[T]his Court employs a two-prong analysis to determine first, whether the waiver was 'voluntary', and second, whether the waiver was 'knowing and intelligent.'" *Thornton,* 800 A.2d at 1025 (quoting *State v. Briggs,* 787 A.2d 479, 486 (R.I.2001)).

"It is generally acknowledged that absent any showing of 'good cause' for a defendant's refusal to accept court-appointed counsel, such refusal is functionally equivalent to a voluntary waiver of the right to counsel." *Thornton,* 800 A.2d at 1025. The record in this case demonstrates that defendant discharged a series of court-appointed attorneys and eschewed the hearing magistrate's repeated admonishments that he was dismissing highly competent counsel. He also, by way of letter to the magistrate, declared that he wished to proceed pro se. Accordingly, we are satisfied that defendant's waiver of counsel was voluntary. A voluntary waiver of counsel, however, does not end the inquiry.

For a defendant's waiver of right to counsel to be valid, it also must be knowing and intelligent. A defendant "should be made aware of the dangers and disadvantages of self-representation, so that the record will establish that 'he knows what he is doing and his choice is made with eyes open.'" *Bluitt,* 850 A.2d at 88 (quoting *Faretta v. California,* 422 U.S. 806, 835, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975)). In this case, we appreciate the hearing magistrate's frustration in repeatedly dealing with an uncooperative and seemingly irrational defendant. We also are mindful that defendant is a Level III sexual offender and a danger to the community. However, the requisite colloquy between the court and defendant that is designed to ensure that a defendant is making a knowing waiver of counsel did not occur in this case. Although the magistrate engaged in some discussions with defendant about the length of the sentence that he was facing and the competence of the attorneys whom defendant had dismissed, we are of the opinion that the magistrate did not undertake steps that would satisfy her that defendant appreciated "the burdens, dangers, and downside risks of representing himself * * *." *State v. Brumfield,* 900 A.2d 1151, 1154 (R.I.2006) (quoting *Bluitt,* 850 A.2d at 89).

Because we are of the opinion that there is no record showing that the defendant knowingly and intelligently waived his right to counsel, we need not reach the question of whether the evidence was sufficient to establish that the defendant violated the terms and conditions of his probation.

## Conclusion

Accordingly, we vacate the judgment of the Superior Court and remand the case to the Superior Court.