STATE

v.

Michael CHABOT.

No. 95–525–C.A.

Supreme Court of Rhode Island.

Sept. 17, 1996.

Aaron Weisman, Assistant Attorney General, for Plaintiff.

Paula Lynch Hardiman, Asst. Public Defender, Paula Rosin, Asst. Public Defender, for Defendant.

## OPINION

**PER CURIAM.**

The defendant, Michael Chabot, appeals from the revocation of his probation. Counsel for both parties came before us to show cause why this appeal should not be summarily decided. Having reviewed their arguments, we conclude that cause has not been shown and that we should proceed to decide the questions presented at this time. For the reasons set forth below, we sustain the defendant's appeal.

On March 23, 1995, the state filed a report alleging that defendant had violated the terms of three previously imposed probationary sentences.[1] The violation was based upon charges that defendant violated a District Court restraining order and assaulted his estranged girlfriend, Leslie Kelly (Kelly). A violation hearing was held before a justice of the Superior Court in which defendant appeared pro se with a public defender as standby counsel. Three witnesses testified at the hearing: defendant's former girlfriend, Kelly; a West Warwick police officer; and a sheriff of the Kent County Superior Court.

Kelly testified that on March 7, 1995, she obtained a restraining order enjoining defendant from contacting her. On March 21, defendant pushed Kelly as she attempted to enter her home. Once inside the residence, defendant deadbolted the door and challenged Kelly to call 911. After distracting defendant, Kelly escaped through a side door and called the police. Testimony established that defendant had been served with the March 7 restraining order prior to the events of March 21, 1995.

During the revocation hearing, defendant expressed confusion and confessed incompetence. After objections were repeatedly sustained to his cross-examination questions, defendant requested that he be given a psy-

---

1. Effective February 19, 1992, defendant was ordered to serve thirty days of a ten-year sentence with nine years and eleven months suspended with probation for breaking and entering; on March 3, 1992, defendant received a five-year suspended sentence with probation for receiving stolen goods; effective September 30, 1992, defendant was ordered to serve six months of a five-year sentence with fifty-four months suspended with probation for leaving the scene of an accident.

chiatric evaluation. The defendant suggested to the trial justice that the prescribed medication he was taking to counter depression and anxiety adversely affected his ability to represent himself adequately. The trial justice denied defendant's request. The defendant then asked that standby counsel be permitted to present final argument, but the trial justice refused. Thereafter, the trial justice found defendant to have violated the terms of his probation and sentenced him to nine years' imprisonment, two years to serve and seven years suspended with probation.

The defendant claims on appeal that the trial justice improperly extended his probationary period beyond that originally imposed in contravention of this court's decision in *State v. Taylor,* 473 A.2d 290, 291 (R.I. 1984).

■ A trial justice has no authority under G.L.1956 § 12–19–9 [2] to extend a violator's probationary period after he or she is ordered to serve the sentence previously imposed. *See Taylor,* 473 A.2d at 291; *State v. Fontaine,* 641 A.2d 1326 (R.I.1994); *State v. Soprano,* 633 A.2d 1357 (R.I.1993). Here, defendant was ordered to serve two years of the previously imposed nine-year-and-eleven-month suspended sentence. The original term of his probation was set to expire on February 19, 2002, and hence, under *Taylor,* the trial justice could not have extended defendant's probation beyond this date. Yet, according to the sentence fixed by the trial justice at the revocation hearing, defendant's probationary period would continue through to January 8, 2004, nearly two years beyond the probationary sentence originally imposed. Consequently the trial justice exceeded his statutory authority in imposing these two additional years of probation. *See* § 12–19–9.

The defendant also claims that given his recent admittance to a psychiatric hospital and the medications that were prescribed for him, the refusal of the trial justice to request a psychiatric evaluation of his competency to waive counsel precluded a finding that he made a knowing and an intelligent waiver of his right to counsel.[3]

■ We have stated before that a violation proceeding presents the possibility of the loss of liberty prompting the requirement of "certain constitutional safeguards." *State v. Hazard,* 671 A.2d 1225, 1226 (R.I.1996). This court has recognized a defendant's right to assistance of counsel in a revocation-of-probation proceeding where a sentence may be imposed. *O'Neill v. Sharkey,* 107 R.I. 524, 527–28, 268 A.2d 720, 722 (1970); *see also Gagnon v. Scarpelli,* 411 U.S. 778, 790, 93 S.Ct. 1756, 1763, 36 L.Ed.2d 656, 666 (1973); *Mempa v. Rhay,* 389 U.S. 128, 137, 88 S.Ct. 254, 258, 19 L.Ed.2d 336, 342 (1967).[4] Nonetheless, a defendant may waive the right to counsel and proceed pro se. *See Faretta v. California,* 422 U.S. 806, 834, 95 S.Ct. 2525, 2541, 45 L.Ed.2d 562, 581 (1975); *Ex parte Lee,* 123 F.Supp. 439, 441 (D.R.I.), *aff'd,* 217 F.2d 647 (1st Cir.1954), *cert. denied,* 348 U.S. 975, 75 S.Ct. 538, 99 L.Ed. 759 (1955); *Lee v. Kindelan,* 80 R.I. 212, 220, 95 A.2d 51, 55, *cert. denied,* 345 U.S. 1000, 73 S.Ct. 1146, 97 L.Ed. 1406 (1953). But such a waiver must be given voluntarily, knowingly, and intelligently. *Faretta,* 422 U.S. at 835, 95 S.Ct. at 2541, 45 L.Ed.2d at 581–82. In evaluating the validity of a purported waiver,

**2.** General Laws 1956 § 12–19–9 states in pertinent part that "[u]pon a determination that the defendant has violated the terms and conditions of his or her probation the court * * * may remove the suspension and order the defendant committed on the sentence previously imposed, or on a lesser sentence, or impose a sentence if one has not been previously imposed, or may continue the suspension of a sentence previously imposed * * *."

**3.** The defendant claims two additional trial errors: the denial of his right to withdraw his waiver of counsel and the improper restrictions placed upon his cross-examination of state witnesses. However, given our decision to remand this case on other grounds, we decline to address these issues.

**4.** For a general discussion on this topic, see Wade R. Habeeb, Annotation, *Right to Assistance of Counsel at Proceedings to Revoke Probation,* 44 A.L.R.3d 306 (1972).

this court looks to the totality of the circumstances. *State v. Perry*, 508 A.2d 683, 687–88 (R.I.1986). A waiver is effectuated only if a defendant *"knows what he [or she] is doing and his [or her] choice is made with eyes open."* (Emphasis added.) *Faretta*, 422 U.S. at 835, 95 S.Ct. at 2541, 45 L.Ed.2d at 582 (quoting *Adams v. United States ex rel. McCann*, 317 U.S. 269, 279, 63 S.Ct. 236, 242, 87 L.Ed. 268, 275 (1942)).

■ An accused should therefore "be made aware of the dangers and disadvantages of self-representation," 422 U.S. at 835, 95 S.Ct. at 2541, 45 L.Ed.2d at 582, and, in circumstances raising legitimate doubts about a defendant's mental condition, the trial justice should inquire concerning a defendant's competency to waive counsel. Failure of the trial justice to take steps to ensure a defendant's understanding of the possible consequences of the proceedings, the advantages of legal representation, and the implications of waiving counsel exposes a defendant's sentence to collateral attack. *See, e.g., United States v. Fant*, 890 F.2d 408 (11th Cir.1989), *cert. denied*, 494 U.S. 1038, 110 S.Ct. 1498, 108 L.Ed.2d 633 (1990); *United States v. Ross*, 503 F.2d 940 (5th Cir.1974); *People v. Hall*, 218 Cal.App.3d 1102, 267 Cal.Rptr. 494 (1990); *In re Manuel R.*, 207 Conn. 725, 543 A.2d 719 (1988); *Morgan v. State*, 504 So.2d 504 (Fla.Dist.Ct.App.1987); *In re Doe*, 77 Hawai'i 46, 881 P.2d 533 (1994).

■ In determining whether a defendant is making a knowing, an intelligent, and a voluntary waiver of his right to counsel at a probation-revocation hearing, the following factors should be considered: (1) the background, the experience, and the conduct of the defendant at the hearing, including his age, his education, and his physical and mental health; (2) the extent to which the defendant has had prior contact with lawyers before the hearing; (3) the defendant's knowledge of the nature of the proceeding and the sentence that may potentially be reimposed; (4) the question of whether standby counsel has been appointed and the extent to which he or she has aided the defendant before or at the hearing; (5) the question of whether the waiver of counsel was the result of mistreatment or coercion; and (6) the question of whether the defendant is trying to manipulate the events of the hearing. *See Fant*, 890 F.2d at 409–10.[5]

■ During preliminary discussions in this case defendant informed the trial justice that he had entered the psychiatric-care unit at Kent County Hospital some five months before the hearing and that he had been prescribed medication for "major depression." At this point in the proceeding, we believe that it was incumbent upon the trial justice to conduct a more searching inquiry of defendant's then existing mental health and physical condition and, if that inquiry raised further questions concerning defendant's competency to waive counsel, to order that defendant undergo a psychiatric evaluation in regard to his competency to waive counsel and to defend himself at the revocation hearing.

Although the trial justice advised defendant of the possibility of imprisonment and the requirement that he conduct his defense according to the Rules of Civil Procedure and the Rules of Evidence, not a single question was directed at ascertaining the accuracy and completeness of defendant's representations concerning: (1) his allegedly recent Kent County Hospital admittance for psychiatric problems; (2) the medications he may have taken that had been prescribed for defendant in connection with his alleged psychiatric

---

5. When evaluating a defendant's ability knowingly and intelligently to waive counsel, a trial justice should be cognizant of the limiting language in *Faretta v. California*, 422 U.S. 806, 835–36, 95 S.Ct. 2525, 2541, 45 L.Ed.2d 562, 581–82 (1975), where the Supreme Court stated:

"[A] defendant need not himself [or herself] have the skill and experience of a lawyer in order competently and intelligently to choose self-representation * * *.

" * * * [T]echnical legal knowledge * * * [is] not relevant to an assessment of [a defendant's] knowing exercise of the right to defend himself [or herself]."

problems, and their effect, if any, on his mental competence to waive counsel and to defend himself at the revocation hearing; and (3) the effect, if any, that these alleged experiences may have had on defendant's mental competency and emotional status at the revocation hearing in order to ensure that his waiver was knowing and intelligent.

Because a defendant's knowledge and understanding of what he or she is doing is essential to effectuate a voluntary waiver of the right to counsel, an inquiry into the matter must sufficiently establish that knowledge and understanding on the record.

"Since a fundamental right is at stake—the right to counsel—trial judges should take the time to inquire into the voluntariness and intelligence of the waiver. Doing so will safeguard the right and protect the judicial system from manipulation." *Strozier v. Newsome*, 871 F.2d 995, 997 n. 4 (11th Cir.1989).

For the reasons stated, the defendant's appeal is sustained and his sentence is vacated. The case is remanded to the Superior Court for a new hearing on whether the defendant violated the terms and conditions of his probation. If at that time the defendant requests to proceed pro se, the trial justice should then conduct an inquiry concerning the defendant's competency to waive counsel and, if necessary, obtain a psychiatric evaluation of the defendant's competency to do so and to represent himself at the revocation hearing. Moreover, at the conclusion of this inquiry, the trial justice should make his findings of fact and law on these issues a part of the record of the proceedings.