STATE

v.

**Lee A. SPENCER.**

**No. 2000–88–C.A.**

Supreme Court of Rhode Island.

Nov. 5, 2001.

---

Aaron L. Weisman, Providence, for Plaintiff.

Paula Lynch Hardiman, Providence, for Defendant.

Present WILLIAMS, C.J., LEDERBERG, BOURCIER, FLANDERS, and GOLDBERG, JJ.

## OPINION

GOLDBERG, Justice.

This case came before the Supreme Court on October 1, 2001, on appeal from a conviction of one count of robbery and two counts of assault with a dangerous weapon. The defendant, Lee A. Spencer (Spencer

or defendant) has argued that his conviction should be reversed because the trial justice failed to determine whether his mid-trial waiver of counsel was made knowingly, intelligently and voluntarily, thus constituting reversible error. The defendant also argued that prosecutorial misconduct that allegedly occurred in the grand jury warrants dismissal of the indictment. We deny the appeal and affirm the conviction.

### Facts and Travel

On June 15, 1998, a person, later identified as Spencer, entered ABC Travel, located in Pawtucket, Rhode Island, and owned by Mercedes Ponce (Ponce), and robbed her at gunpoint. During the robbery, the inhabitants of a neighboring shop heard Ponce's screams and attempted to help her. Although Ponce was not able to positively identify defendant as the person who committed the robbery, Mauricio Garces, the son of a neighboring shop owner, identified defendant from a photo array of six people and later identified him at trial.

On December 11, 1998, defendant was charged by grand jury indictment with one count of first-degree robbery in violation of G.L.1956 § 11–39–1 and two counts of felony assault in violation of G.L.1956 § 11–5–2(b), approximately three months before trial. On May 12, 1999, defense counsel entered his appearance on behalf of Spencer. After several pretrial motions, including an evidentiary hearing relating to the admissibility of defendant's statement to the police, were resolved, defendant's trial began on September 9, 1999. After the state completed the direct examination of its first witness, the victim, and during defendant's cross-examination, defense counsel indicated to the trial justice that defendant wished to undertake the remainder of Ponce's cross-examination and to represent himself for the remainder of the trial. The court then engaged in the following colloquy with the defendant:

"THE COURT: Is that what you want sir?

"DEFENDANT: That's what I want.

"THE COURT: * * * Even though I might think it's a foolish, foolish move, by law I'm required to allow you to represent yourself.

"DEFENDANT: Your honor I think it's foolish too.

"THE COURT: I think it's foolish as well.

"DEFENDANT: But there is some issues that need to be addressed with each one of these witnesses and I don't think they are and my attorney here feels like-appears to be under some pressure. This is my life and I want to do it.

"THE COURT: You have an absolute right to do it but you can't ask questions and then Mr. Wiley ask further questions.

"DEFENDANT: No, I will do it. I will do it all.

* * *

"THE PROSECUTOR: Obviously the state cannot object. It's his right as long as [the waiver of counsel is] made knowingly and intelligently.

"THE COURT: Well, I assume you know what you're doing.

"DEFENDANT: Absolutely.

"THE COURT: And you know the consequences.

"DEFENDANT: Absolutely.

"THE COURT: You know, you don't know all the rules of evidence.

"DEFENDANT: Absolutely.

"THE COURT: I'm going to hold you to those.

"DEFENDANT: It's too late to ask for another attorney so I rather do it myself."

The defendant thereupon proceeded to represent himself for the remainder of the trial and, although defense counsel remained as standby counsel to advise and assist him, his performance was less than stellar. After Spencer was convicted, however, defense counsel again assumed responsibility of the case for the hearing on a motion for a new trial and the sentencing proceeding. The trial justice denied defendant's motion for a new trial and imposed a sentence of thirty years at the Adult Correctional Institutions for robbery, fifteen to serve, followed by a suspended sentence and probation and ten years for each count of assault with a dangerous weapon.

On appeal, defendant alleged that the trial justice failed to properly inquire into his waiver of counsel and failed to determine that the waiver was made knowingly, intelligently and voluntarily. Further, defendant argued that the indictment should have been dismissed because of prosecutorial misconduct before the grand jury.

### Waiver of Counsel

 Under the Sixth Amendment to the United States Constitution, a defendant is entitled to represent himself at trial, providing the waiver of counsel is knowing and voluntary. *Faretta v. California*, 422 U.S. 806, 819, 95 S.Ct. 2525, 2532, 45 L.Ed.2d 562, 581–82 (1975). The defendant must be "made aware of the dangers and disadvantages of self-representation, so that the record will establish that 'he knows what he is doing and his choice is made with eyes open.'" *Id.* at 835, 95 S.Ct. at 2541, 45 L.Ed.2d at 582 (quoting *Adams v. United States ex rel. McCann*, 317 U.S. 269, 279, 63 S.Ct. 236, 242, 87 L.Ed. 268, 275 (1942)). In *State v.*

*Chabot*, 682 A.2d 1377, 1380 (R.I.1996), this Court had occasion to pass upon the validity of a waiver of counsel in the context of a defendant who recently had been hospitalized for psychiatric care and "had been prescribed medication for 'major depression.'" We held that in circumstances raising legitimate doubts about a defendant's mental condition, the trial justice should inquire concerning a defendant's competency to waive counsel. *Id.* We thereupon set forth several factors that should be considered in determining whether the waiver of counsel is knowing, voluntary and intelligent. These factors include:

"(1) the background, the experience, and the conduct of the defendant at the hearing, including his age, his education, and his physical and mental health; (2) the extent to which the defendant has had prior contact with lawyers before the hearing; (3) the defendant's knowledge of the nature of the proceeding and the sentence that may potentially be reimposed; (4) the question of whether standby counsel has been appointed and the extent to which he or she has aided the defendant before or at the hearing; (5) the question of whether the waiver of counsel was the result of mistreatment or coercion; and (6) the question of whether the defendant is trying to manipulate the events of the hearing." *Id.*

 Although the simplest method to determine whether a waiver of counsel is knowing or voluntary may be a detailed colloquy between the trial court and the defendant, such an inquiry is not constitutionally required. *Lopez v. Thompson*, 202 F.3d 1110, 1117 (9th Cir.2000). In fact, the Supreme Court has indicated that the inquiry "must be pragmatic and directed to the 'particular stage of the proceedings in question.'" *Id.* at 1119 (citing *Patterson v. Illinois*, 487 U.S. 285, 298, 108 S.Ct.

2389, 2397, 101 L.Ed.2d 261, 276 (1988)). We are persuaded that an examination of the totality of the circumstances, in light of the particular stage of the proceedings at the time the waiver is proposed, is the better approach to determine whether a waiver of counsel is knowing, voluntary and intelligent. Clearly, the factors set forth in *Chabot,* while mandatory in cases in which the mental competency of the defendant is questioned, remain relevant considerations under the totality of the circumstances analysis.

■ Here, we are satisfied that the trial justice had the benefit of defendant's long and detailed testimony during the pretrial hearing that demonstrated defendant's understanding of the seriousness of the crime with which he was charged and the length of the prison term he faced upon conviction. The defendant also testified that he knew from previous experience with the police that, upon arrest, the police were required to advise a person of his or her Miranda rights, and defendant acknowledged that the police had so advised him on two or three previous occasions. In addition, Spencer testified that he had signed the rights form at the station and said that he would not talk to the police without consulting an attorney. Thus, defendant was no stranger to the criminal justice system. Further, during the mid-trial colloquy with the trial justice, in which he insisted on representing himself, defendant indicated that he could "do it all," including questioning the witnesses on the record. When asked whether he appreciated the seriousness of his decision and the consequences of a conviction, he said "absolutely." Significantly, defendant did not ask the court to pass the case or grant him a continuance so he could retain substitute counsel or prepare for trial. The defendant merely concluded that it "was too late to ask for another attorney;" thus, he elected "to do it [him]self." There is no suggestion in the record before us that the decision to proceed *pro se* was the result of mistreatment or coercion, but rather was obviously motivated by defendant's dissatisfaction with counsel based on his belief that there were "some issues that needed to be addressed with each one of these witnesses" and that defendant believed he was the man for the job.

Importantly, we note that Spencer had the benefit of counsel through the pretrial proceedings, jury selection, during a significant portion of the testimony of the central witness in the case, and during the sentencing phase of the trial. Defense counsel also had been directed to remain as standby counsel during the remainder of the trial and was able to advise defendant about aspects of the law with which Spencer may not have been familiar.[1] Finally, the evidence against this defendant was strong; not only did the victim testify, an independent eyewitness was able to identify defendant as the perpetrator and Spencer himself provided additional incriminating evidence.

Although the trial justice ought to have engaged in a more detailed colloquy with the defendant before allowing him to represent himself, we are not persuaded that such an inquiry would have revealed any factors suggesting that the waiver of counsel was not knowing, voluntary or the product of a conscious and deliberate decision on the part of defendant to pursue a line of questioning he deemed crucial to his defense. Accordingly, in light of the particular stage of the proceedings, the mid-trial cross-examination of the complainant,

---

1. Although defense counsel was absent when evidence, that appellate counsel considers to be of significance, was admitted, we do not consider that admission of evidence to be of sufficient magnitude to justify vacating the conviction.

and the defendant's stated intention to pursue a line of questioning that he considered crucial to his defense, we are satisfied that the trial justice engaged in a pragmatic inquiry sufficient to satisfy himself that defendant's waiver of counsel was made "with eyes open." *Faretta,* 422 U.S. at 835, 95 S.Ct. at 2541, 45 L.Ed.2d at 581–82.

■ We note, however, that the trial justice was operating under the mistaken belief that he had no choice but to allow defendant to waive counsel, even mid-trial. This is incorrect. The mandate to determine that a waiver of counsel is valid, knowing and voluntary, includes by implication, the concomitant responsibility to deny the waiver when, in the judgment of the trial justice, the defendant's decision to proceed *pro se* is neither voluntary nor made with a full understanding of the risks and consequences. Defendants may elect to embark upon a foolish and reckless trial mission. However, they must do so with their eyes open to the pitfalls ahead. *Chabot,* 682 A.2d at 1380.

Accordingly, based on the totality of the circumstances, particularly in light of the fact that the waiver of counsel occurred mid-trial, we are not persuaded that defendant's election to waive counsel and proceed *pro se* was defective or unknowing or involuntary.

### Dismissal of Indictment

■ The defendant also argued that the disclosure to the grand jury that defendant failed to pass a computerized voice stress analyzer test amounted to prosecutorial misconduct that justified the dismissal of the indictment. Although voice stress analyzer tests are akin to polygraph tests, purportedly designed to determine truth and veracity, and clearly are inad-missible at trial, the rules of evidence are inapplicable to grand jury proceedings.

> "To dismiss an indictment because of such misconduct means that even though a jury unanimously found a defendant guilty beyond a reasonable doubt, we would nevertheless void his conviction because the prosecution had made a misstep in obtaining a grand-jury determination of probable cause." *State v. Romano,* 456 A.2d 746, 750 (R.I. 1983).

Dismissal of an indictment on the ground of prosecutorial misconduct is an "extraordinary sanction reserved for very limited and extreme circumstances." *State v. Mainelli,* 543 A.2d 1311, 1313 (R.I.1988). Certainly, the introduction of the computerized voice stress analyzer evidence before the grand jury was inappropriate and prejudicial, but the error does not warrant dismissal of the indictment when otherwise competent evidence to establish probable cause also was presented. Further, Spencer's subsequent conviction by a jury based on proof beyond a reasonable doubt, and not tainted by the inadmissible evidence, renders dismissal of the indictment unwarranted. *Romano,* 456 A.2d at 750.

### Conclusion

For the aforementioned reasons, the defendant's appeal is denied and dismissed, the judgment appealed from is affirmed, and the papers in this case may be remanded to Superior Court.