STATE

v.

Stacey **BRUMFIELD.**

No. 2005–279–C.A.

Supreme Court of Rhode Island.

June 22, 2006.

Jane M. McSoley, Esq., for Plaintiff.

Mary J. Ciresi, Esq., for Defendant.

Present: WILLIAMS, C.J., and GOLDBERG, FLAHERTY, SUTTELL, and ROBINSON, JJ.

## OPINION

Chief Justice WILLIAMS, for the Court.

The defendant, Stacey Brumfield (defendant), appeals from a Superior Court judgment finding that he violated the terms of his probation. This case came before the Supreme Court for oral argument on May 15, 2006, pursuant to an order directing the parties to appear and show cause why the issues raised in this appeal should not summarily be decided. After hearing the arguments of counsel and examining the memoranda filed by the parties, we are of the opinion that this appeal may be decided at this time, without further briefing or argument. For the reasons set forth below, we vacate the judgment of the Superior Court.

## I

### Facts and Travel

In June 2005, the state presented defendant as a probation violator, alleging that he sold a $20 bag of crack cocaine to a police officer in an unmarked car.[1] At the beginning of the hearing, the hearing justice and defendant's attorney engaged in a discussion concerning defendant's desire to be represented by counsel other than his current attorney, the public defender. This discussion centered on defendant's refusal to accept a plea bargain, the public defender's mostly failed attempts to secure alibi witnesses, and the possibility that another witness, who at the time of the hearing had not yet been contacted, might have been able to help establish defendant's alibi.

Addressing the court personally, defendant then maintained that he no longer wished to be represented by the public defender and that he wanted to hire a private attorney. In answering the hearing justice's question, defendant said that he was unsure precisely how he would hire a private attorney. When the hearing justice questioned defendant about why he would have consulted the public defender's office if he had wanted to hire private counsel, defendant admitted that he had been indecisive. After placing defendant's criminal history on the record, the hearing justice told defendant that the probation revocation hearing would proceed and, in the event that the hearing justice found sufficient evidence to prove that defendant had violated the terms of his probation, the hearing justice would order him held until he could track down his alibi witnesses. Although defendant assented to the removal of the public defender from the case,

1. In October 2003, defendant pleaded *nolo contendere* to the charge of possession of a stolen motor vehicle and was sentenced to five years in prison, with four months to serve and the remaining fifty-six months suspended, with probation.

he seemed to indicate surprise when the hearing justice informed him, just before the state called its first witness, that defendant himself would be conducting cross-examination: The defendant asked, "I can ask my own questions?"

At the hearing, Det. Patrick R. Creamer (Det.Creamer) testified that defendant sold him crack cocaine on Amherst Street in Providence on June 13, 2005, at approximately 10:30 a.m. Detective Creamer did not arrest defendant at that time, but did arrest him when he saw defendant in the same neighborhood at approximately 4:30 p.m. The defendant then cross-examined Det. Creamer, asking him, among other questions, to explain why he did not arrest the suspect at the time of the drug transaction. After the state rested, the hearing justice asked defendant whether any other witness besides his girlfriend would ever testify on his behalf and defendant conceded, "most likely not," and, "I can't really say so at this point in time." The defendant then called his girlfriend to the stand. Although the testimony elicited by defendant was at best unclear, presumably defendant was attempting to establish his alibi, that at approximately 10:30 a.m. on June 13, 2005, he was at his home caring for his children.

The hearing justice found that defendant had violated the terms of his probation, removed the suspension in its entirety, and committed defendant to serve fifty-six months in prison.

## II

### Analysis

The defendant appeals the ruling of the hearing justice on three grounds: (1) The hearing justice erred in not allowing defendant time to obtain private counsel; (2) the hearing justice erred in failing to determine that defendant voluntarily, and know-ingly and intelligently waived his right to counsel; and (3) the hearing justice erred by not appointing standby counsel. Since we agree with defendant's argument that the hearing justice did not make a sufficient determination that defendant knowingly and intelligently waived his right to counsel, we need not address the other issues defendant raised.

■ Although a probation revocation hearing " 'does not give rise to the full panoply of rights that are due a defendant at trial,' " *State v. Gautier*, 871 A.2d 347, 358–59 (R.I.2005), a defendant's right to counsel nevertheless obtains at a probation revocation hearing at which a prison sentence may be imposed, *State v. Chabot*, 682 A.2d 1377, 1379 (R.I.1996); *see also State v. Dias*, 118 R.I. 499, 504–05, 374 A.2d 1028, 1030 (1977) (holding that a hearing justice abused his discretion in refusing to grant a continuance "in order to give the defendant reasonable opportunity to secure counsel of his choice * * *").

■ "This Court employs a two-prong analysis to review the validity of a defendant's waiver of counsel: first, we must determine whether the waiver was 'voluntary'; then, we must determine whether it was 'knowing and intelligent.' " *State v. Laurence*, 848 A.2d 238, 253 (R.I.2004) (quoting *State v. Thornton*, 800 A.2d 1016, 1025 (R.I.2002)). "When considering the validity of the waiver, we examine the totality of the circumstances. * * * These determinations are reviewed *de novo*, with deference to the [hearing] justice's findings of historical fact." *Id.*

This case bears a striking resemblance to *State v. Bluitt*, 850 A.2d 83, 89 (R.I. 2004), in which we held that the record did not support a conclusion that the defendant in that case "knowingly and intelligently waived his right to counsel." In that case, after acknowledging that defendant discharged his trial counsel, we dis-

tinguished the facts of *Bluitt* from other cases on the ground that the defendant did not advise the court "that he wanted to represent himself at the trial." *Id.* at 88. We found fault with the trial justice's failure to make defendant aware that one of the repercussions of firing his attorney would be that he would have to represent himself at trial: "[T]he trial justice never took any steps to make sure that the record reflected that defendant appreciated the fact that, by discharging his attorney just before the trial would begin, he would now be facing all the burdens, dangers, and downside risks of representing himself at trial." *Id.* at 89.

 In this case, the record reveals that defendant never indicated a willingness to represent himself *pro se*. Instead, his response to the hearing justice's warning that he would have an opportunity to cross-examine the state's witness—"I can ask my own questions?"—indicates that defendant likely never contemplated a proceeding in which he would have to act as his own attorney. Furthermore, the record discloses that each time the hearing justice asked defendant whether he wanted the public defender to represent him, the hearing justice failed to make clear that a decision to remove the public defender from the case would result in defendant's representing himself. Moreover,

the hearing justice never advised defendant of the risks involved in proceeding *pro se*.

 Although we normally give deference to the hearing justice's findings of historical fact, the only finding he made on the record with respect to a waiver of the right to counsel was that defendant was no stranger to criminal prosecution. That finding is insufficient to warrant a legal conclusion that defendant waived his right to counsel,[2] nor does it override the parallels between the facts of this case and *Bluitt*. For the reasons set forth above, we hold that the hearing justice erred when he required defendant to represent himself *pro se* in the absence of a knowing and intelligent waiver of his right to counsel.

Finally, the facts of this case do not resemble the factual scenarios in *Thornton* and *Laurence*. In both those cases, the respective defendants represented themselves only after repeatedly rejecting court-appointed counsel. *Laurence*, 848 A.2d at 252 (stating that the defendant had a dispute with three court-appointed attorneys); *Thornton*, 800 A.2d at 1024 (stating that the defendant rejected "the services of competent counsel" three times). In contrast, the defendant in this case neither asked to proceed *pro se* nor repeatedly rejected court-appointed counsel.

---

**2.** Some of the briefing by the parties focused on whether the hearing justice erred in failing to apply the six factors delineated in *State v. Chabot*, 682 A.2d 1377, 1380 (R.I.1996). Although we agree with the state that an on-the-record elucidation of these factors is mandatory only when the mental competency of a defendant is in question, *State v. Spencer*, 783 A.2d 413, 417 (R.I.2001), this Court need not examine the record in this instance and apply the *Chabot* factors to determine whether defendant waived his right to counsel. Whether a defendant has properly waived his or her right to counsel is a two-part inquiry in which we apply the *Chabot* factors in the second

part of the inquiry to determine whether the defendant's waiver was knowing and intelligent. *See State v. Thornton*, 800 A.2d 1016, 1026–31 (R.I.2002). Furthermore, we need not analyze those factors in cases such as this in which a defendant never advised the hearing justice that he wished to proceed *pro se*. *See State v. Bluitt*, 850 A.2d 83, 87, 88, 89 (R.I.2004) (delineating, but not applying, the *Chabot* factors while concluding that the trial justice erred in failing "to make sure that the record reflected that the defendant's waiver of his right to counsel was knowing and intelligent").

## Conclusion

For the foregoing reasons, we vacate the judgment of the Superior Court. The record shall be remanded to the Superior Court for further proceedings not inconsistent with this opinion.