Bruce ROSE

v.

**STATE of Rhode Island.**

**No. 2009–58–Appeal.**

Supreme Court of Rhode Island.

May 27, 2010.

Mark B. LaRoche, Esq., Providence.

Virginia M. McGinn, Department of Attorney General.

**ORDER**

The applicant, Bruce Rose (applicant or Rose), appeals from the denial of his application for postconviction relief in the Superior Court. For the reasons that follow, we reject the applicant's assertions of error and affirm the judgment of the Superior Court.

In October 1997, Rose entered a plea of *nolo contendere* to the crime of breaking and entering with intent to commit larceny and was sentenced to ten years at the Adult Correctional Institutions, with eighteen months to serve, eight and one-half years suspended, with probation. At the time of his plea, Rose had a pending disability application with the United States Social Security Administration (SSA), based on head injuries he had suffered in a 1984 assault. That circumstance was not disclosed to the justice during the plea proceeding. The applicant's disability application subsequently was granted in January 1998.[1]

Notwithstanding his disability, Rose continued his burglary career—in 2004, after he was charged with a new crime of breaking and entering, he was brought before the Superior Court as an alleged probation violator with respect to the 1997 offense. The violation hearing was held over a period of several days, and the hearing justice heard testimony from the alleged victim and two police officers. The applicant was represented by counsel during this hearing. The hearing justice reasonably was satisfied that Rose had violated the terms of his suspended sentence; he was ordered to serve seven years of the previously imposed sentence.

Subsequently, in 2005, Rose filed a *pro se* application for postconviction relief, seeking to set aside the 1997 conviction.[2] In the application, he set forth thirteen grounds in support of contentions, including a claim of "newly discovered evidence" that he had "been found medically incapable of making a knowing and intelligent [*sic*] plea." The applicant also alleged a series of due process violations, as well as ineffective assistance of counsel, and a request to correct his sentence. He also argued that there were mitigating factors that should have been taken into account when the original sentence was imposed. The Superior Court heard arguments on the application on June 26, 2006, and September 27, 2006; Rose was represented by counsel during this proceeding. On September 27, 2006, a judgment was entered denying and dismissing the application. A timely notice of appeal followed.

Before this Court, applicant raises two issues. He first contends that the hearing

---

1. Specifically, applicant informs this Court that in connection with the application, the United States Social Security Administration (SSA), found that he had a "significant organic mental disorder and personality disorder complicated by a seizure disorder" and "[h]is

mental disorders posed marked limitations in concentration and social functioning."

2. The application erroneously states the date of conviction as February 13, 2004; that date actually was the date of the violation hearing.

justice improperly conducted the plea hearing that gave rise to the 1997 conviction. Secondly, applicant asserts that the postconviction-relief justice erred in denying the postconviction-relief application.

We begin our analysis by noting our well-established standard of review. "Post-conviction relief is available to any person in this state pursuant to G.L. 1956 chapter 9.1 of title 10, who, after having been convicted of a crime, claims, '*inter alia*, that the conviction violated [his or her] constitutional rights * * *.'" *Powers v. State*, 734 A.2d 508, 513–14 (R.I.1999) (quoting *Mastracchio v. Moran*, 698 A.2d 706, 710 (R.I.1997)). A trial justice's findings on an application for postconviction relief are afforded great deference and will not be disturbed "absent clear error or a showing that the trial justice overlooked or misconceived material evidence." *State v. Thomas*, 794 A.2d 990, 993 (R.I.2002). *See Rodrigues v. State*, 985 A.2d 311, 313 (R.I. 2009) ("We will uphold a postconviction relief decision absent clear error or a determination that the hearing justice misconceived or overlooked material evidence."); *Moniz v. State*, 933 A.2d 691, 694 (R.I.2007) ("When this Court reviews a ruling on an application for postconviction relief, we afford great deference to the motion justice's findings of fact.").

With respect to his contention that his 1997 plea was defective, applicant directs us to the requirements of Rule 11 of the Superior Court Rules of Criminal Proce-

dure[3] and our holding in *Thomas*, in which we declared:

> "It is well settled that 'before accepting a plea of guilty or *nolo contendere*, the Superior Court justice [is] obliged to determine whether a criminal defendant was aware of the nature of a plea and its effect on his or her fundamental rights, including the right to a jury trial.'" *Thomas*, 794 A.2d at 993 (quoting *Ouimette v. State*, 785 A.2d 1132, 1135 (R.I. 2001)).

Specifically, Rose contends that the plea justice failed to comply with Rule 11 because he did not inquire into applicant's competency. The state, on the other hand, points to the transcript of the plea colloquy that took place in 1997 and contends that the plea justice explained the plea and asked pertinent questions to ensure that Rose understood the crimes, the nature and consequences of the plea, and the sentence to be imposed.

Our careful review of the transcript satisfies us that the requirements of Rule 11 were satisfied in this case. The hearing justice explained to applicant the nature and consequences of a plea of *nolo contendere* and advised him that it served as a waiver of his rights. The applicant further was advised and admonished as to the charges against him and the sentence he would receive if the plea were accepted. Moreover, the hearing justice inquired into whether Rose understood the nature and consequences of the plea. The hearing justice then found that "there is a factual

---

**3.** Rule 11 of the Superior Court Rules of Criminal Procedure provides:

"A defendant may plead not guilty, guilty or, with the consent of the court, nolo contendere. The court may refuse to accept a plea of guilty, and shall not accept such plea or a plea of nolo contendere without first addressing the defendant personally and determining that the plea is made voluntarily with understanding of the nature of

the charge and the consequences of the plea. If a defendant refuses to plead or if the court refuses to accept a plea of guilty or if a defendant corporation fails to appear, the court shall enter a plea of not guilty. The court shall not enter a judgment upon a plea of guilty or nolo contendere unless it is satisfied that there is a factual basis for the plea."

basis for the plea" and that Rose had "the capacity to understand the nature and consequences of his plea including but not limited to the waiver of those rights reviewed with him."

Having examined the record before us, including the transcript of the plea, it is our opinion that the trial justice's colloquy with applicant was thorough, established that the plea was voluntary, and that it was made with knowledge and understanding of the charges against him. *See Rodrigues*, 985 A.2d at 314 (acknowledging after reviewing the record and transcript, that a trial justice's colloquy was thorough and established that the plea was voluntary and made with knowledge and understanding of the charges); *State v. Frazar*, 822 A.2d 931, 936 (R.I.2003) (recognizing that the plea colloquy demonstrated that the defendant understood his rights and voluntarily relinquished them); *Tavarez v. State*, 826 A.2d 941, 943 (R.I.2003) (ruling that there was a proper colloquy when the trial justice clearly explained the defendant's rights and inquired about the defendant's understanding of the plea).

The applicant next argues that the hearing justice clearly erred when, in denying his application, he rejected Rose's contention that he lacked the mental capacity to intelligently and knowingly enter the plea. The applicant avers that the SSA disability determination from 1998 triggered the need for the hearing justice to consider the factors set forth in *State v. Chabot*, 682 A.2d 1377, 1380 (R.I.1996).[4] We disagree.

In *Chabot*, this Court held that if a defendant waives his right to counsel and, in doing so, creates a legitimate doubt about his mental condition, then "it [is] incumbent upon the trial justice to conduct a more searching inquiry of defendant's then existing mental health and physical condition[.]" *Chabot*, 682 A.2d at 1380. Specifically, the trial justice in *Chabot*, was notified that the defendant had been under psychiatric care for approximately five months at the time he waived his right to counsel. Based on that information, this Court vacated the sentence and remanded the case for a new probation-violation hearing. *Id.* at 1381.

Unlike the facts in *Chabot*, 682 A.2d at 1378, in which the defendant was *pro se*, and the hearing justice was aware of his mental health issues, Rose was represented by counsel at the violation hearing and the prior plea proceeding. There is no suggestion in the record before us that either justice should have been alerted, in any way, to the SSA disability determination;[5] nor was there any expert testimony presented at the postconviction-relief hear-

---

4. In *State v. Chabot*, 682 A.2d 1377 (R.I. 1996), we discussed the factors that a trial justice should consider when determining whether a defendant has made a knowing, intelligent, and voluntary waiver of his or her right to counsel at a probation revocation hearing:

"(1) the background, the experience, and the conduct of the defendant at the hearing, including his age, his education, and his physical and mental health; (2) the extent to which the defendant has had prior contact with lawyers before the hearing; (3) the defendant's knowledge of the nature of the proceeding and the sentence that may

potentially be reimposed; (4) the question of whether standby counsel has been appointed and the extent to which he or she has aided the defendant before or at the hearing; (5) the question of whether the waiver of counsel was the result of mistreatment or coercion; and (6) the question of whether the defendant is trying to manipulate the events of the hearing." *Id.* at 1380.

5. There has been no evidence presented in this case that remotely correlates a SSA disability to a purported lack of capacity for an effective plea.

ing suggesting otherwise.[6] There are no circumstances in the record before us that cause us to question the decision of the postconviction-relief justice and there is no evidence suggesting that the hearing justice or the original-plea justice should have applied the factors set forth in *Chabot.* *Cf. State v. Holdsworth*, 798 A.2d 917, 925 (R.I.2002) (recognizing where the defendant disclosed to the hearing justice that he was receiving Social Security disability benefits because of mental health issues, we held that defendant's mental-health disclosures should have served as a red flag for the court to proceed with *Chabot* factors). Here, there was no evidence that should have alerted anyone to a potential mental disability that this applicant may have had during his original plea colloquy in 1997.

For the reasons stated herein, we affirm the judgment of the Superior Court. The applicant's appeal is denied and dismissed; the record shall be remanded to the Superior Court.

Justice INDEGLIA took no part in the consideration or decision of this appeal.

---

6. We pause to note the problem presented with the timeline in this case. Essentially, applicant argues that the 2006 postconviction-relief-hearing justice should have determined that the 1997 hearing justice erred by not applying the *Chabot* factors because of applicant's SSA disability determination. However, the disability determination was not made until 1998, *after* the plea. Superior Court hearing justices are not expected to anticipate a defendant's potential mental-disability determinations.