November 21, 2017

**Supreme Court**

No. 2015-204-C.A.
(P3/14-809A)

State                          :

    v.                         :

Tonya Withers.                 :

NOTICE:  This opinion is subject to formal revision before publication in the Rhode Island Reporter.  Readers are requested to notify the Opinion Analyst, Supreme Court of Rhode Island, 250 Benefit Street, Providence, Rhode Island 02903, at Telephone 222-3258 of any typographical or other formal errors in order that corrections may be made before the opinion is published.

|   |   |
|---|---|
| State | : |
| v. | : |
| Tonya Withers. | : |

Present:  Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia, JJ.

### O P I N I O N

**Justice Indeglia, for the Court.**  Following a jury trial in Providence County Superior Court, the defendant, Tonya Withers (Withers or defendant), was found guilty of one count of simple assault in violation of G.L. 1956 § 11-5-3.  On appeal, the defendant argues that the trial justice erred in denying her motion for a new trial and her request to proceed *pro se*.  This case came before the Supreme Court on September 26, 2017, pursuant to an order directing the parties to appear and show cause why the issues raised in this appeal should not be summarily decided. After hearing the arguments of counsel and reviewing the parties' memoranda, we are satisfied that cause has not been shown.  Accordingly, we shall decide the appeal at this time without further briefing or argument.  For the reasons set forth herein, we affirm the judgment of the Superior Court.

### I

### Facts and Travel

In February 2014, Maria DiPaola owned a rental property located at 167 Admiral Street in Providence.  On February 11, 2014, DiPaola was at the property—a "split ranch duplex"— with her employee, Paul Barros, cleaning the property and preparing it for a rental showing to a

prospective tenant. The previous renter, Withers, had been a tenant for only two months when she left a note indicating that she had moved and would pick her mattress up at a later date.

At trial, DiPaola testified that, as she was cleaning, Barros yelled to her that Withers and a man—later identified in the police report as Antonio Bryant—were approaching the property. The property had exterior stairs in the front of the building, and it also had interior stairs leading up to the apartment door. DiPaola instructed Barros to stop Withers from coming into the apartment. In response to "yelling and shouting," DiPaola recalled that she opened the apartment door to see Withers and Bryant walking up the stairs. DiPaola testified that Withers was walking backwards up the outside stairwell, using a walker, and Bryant was assisting by pushing the walker.

DiPaola walked down the interior stairs and began yelling at Withers, "[y]ou can't come in." At this point, DiPaola observed Withers "barrelling [*sic*] up the stairs," before Withers "grabbed [her] on [her] arm" and "threw [her] down the stairs." DiPaola tumbled down about four or five stairs and landed at the very bottom of the stairwell. In response, DiPaola called out to Barros, "Help me. She threw me downstairs." DiPaola testified that Barros was located on the exterior stairs at this time.

At trial, Barros recalled walking out of the building to the exterior stairs as Withers and Bryant were walking up those stairs. He called the police to report Withers' arrival on the property without DiPaola's consent, and at the same time he noticed DiPaola "on the floor, yelling, Call [*sic*] the police. She just pushed me down the stairs." On cross-examination, defense counsel asked Barros whether he had seen Withers walking up the inside stairs, to which Barros responded, "She went passed [*sic*] me with the other guy * * * and she started going up

the stairs." Barros then clarified that he did not actually see Withers going up the stairs because he was looking at his phone, but he stated that he knew she had been walking up the stairs.

Officer Brian Auclair responded to DiPaola's apartment building for a reported assault, and he spoke with DiPaola who "appeared upset. I believe she was crying." Officer Auclair testified that DiPaola told him she was pushed down the stairs by the second-floor tenant. Officer Auclair took a written statement from DiPaola, who was "shaking" while she wrote. In his police report, Officer Auclair memorialized the events as follows:

> "DiPaola and Barros stated that Tonya Withers * * * and Antonio Bryant * * * came rushing up the stairs and began to force the door open. When DiPaola ran down the stairs telling her to stop, Withers pushed her causing DiPaola to fall down the stairs. Police observed DiPaola holding her left shoulder but she refused Rescue."

In her written statement, DiPaola wrote that Withers "came up to [the] door, and was pushing it in[.] I ran down the stairs to open [the] door. And she grab[ed] me and push[ed] me down outside stairs." On redirect, the prosecutor asked DiPaola what she considered "outside" stairs, and DiPaola responded that she meant the stairs outside the apartment, meaning the interior stairs.

On cross-examination, defense counsel confronted DiPaola with her prior testimony from a housing court hearing a few weeks after the purported assault. In those proceedings, DiPaola described the incident: "I came to the front door, and [Withers] started screaming at me, and I was in front of the door, and she was trying to move me out of the door, and she literally picked me up and threw me down the stairs." When defense counsel asked DiPaola at trial to what stairs she had been referring, DiPaola clarified that she considered the apartment door the front door, indicating that the stairs she was thrown down were the interior stairs.

After the close of the trial, the jury found defendant guilty of simple assault. The defendant moved for a new trial, which was denied. The defendant was sentenced to one year of probation, including mental health counseling. The trial justice also ordered no contact between defendant and the victim. The defendant timely appealed to this Court. In her appeal, defendant raises two issues—(1) the trial justice erred in denying a motion for a new trial; and (2) the trial justice erred in not letting defendant proceed *pro se*, pursuant to the Sixth Amendment to the United States Constitution and article 1, section 10 of the Rhode Island Constitution.[1]

## II

### Standard of Review

### A

### Motion for a New Trial

When this Court reviews a motion for a new trial, we give "great weight" to a trial justice's ruling when she "articulate[s] sufficient reasoning in support of the ruling." *State v. Kizekai*, 19 A.3d 583, 589 (R.I. 2011) (quoting *State v. Guerra*, 12 A.3d 759, 766 (R.I. 2011)). We will disturb a trial justice's ruling only "if we are convinced that the trial justice committed clear error or that * * * she overlooked or misconceived material and relevant evidence [relating] to a critical issue in the case." *Id.* (quoting *State v. Cardona*, 969 A.2d 667, 672-73 (R.I. 2009)). On appeal, this Court "give[s] great deference" to a trial justice's "credibility determination" and "will not itself weigh the credibility of the witnesses." *Id.* at 590 (quoting *State v. Roberts*, 705 A.2d 1380, 1380 (R.I. 1997) (mem.)).

---

[1] Courts now often refer to *pro se* parties as "'self-represented litigants.'" *Tworog v. Tworog*, 45 A.3d 1194, 1196 n. 3 (R.I. 2012).

**B**

**Sixth Amendment Right to Proceed without Counsel**

When this Court reviews a trial justice's determination of whether a defendant's request to waive his or her right to counsel is "knowing, voluntary, and intelligent," the analysis is conducted *de novo*.[2] *State v. Cruz*, 109 A.3d 381, 389 (R.I. 2015) (quoting *State v. Sampson*, 24 A.3d 1131, 1139 (R.I. 2011)). With respect to the trial justice's "findings of historical fact, and inferences drawn from those facts," this Court defers greatly to the trial justice's determinations. *State v. Eddy*, 68 A.3d 1089, 1098 (R.I. 2013) (quoting *Thornton v. State*, 948 A.2d 312, 316 (R.I. 2008)).

**III**

**Discussion**

**A**

**Motion for a New Trial**

The defendant contends that the trial justice should have granted her motion for a new trial because she found the only witness capable of proving that an assault actually happened to be not credible. In determining whether to grant a new trial, "the trial justice must '(1) consider the evidence in light of the jury charge, (2) independently assess the credibility of the witnesses and the weight of the evidence, and then (3) determine whether he or she would have reached a result different from that reached by the jury.'" *State v. Moore*, 154 A.3d 472, 481 (R.I. 2017)

---

[2] The state points this Court to a number of federal district court cases in support of its position that this Court's relevant standard of review should be abuse of discretion. *See State v. Winkler*, 698 S.E.2d 596, 602 (S.C. 2010) (collecting cases) (stating that a number of jurisdictions have held that a defendant's right to proceed *pro se* falls within a trial justice's discretion once a trial has started). However, in light of our recent decision in *Cruz*, we review the trial justice's decision *de novo*. *See State v. Cruz*, 109 A.3d 381, 386, 389 (R.I. 2015) (reviewing a trial justice's grant of a defendant's request to proceed without counsel once the jury selection had commenced).

(quoting *State v. Fleck*, 81 A.3d 1129, 1134 (R.I. 2014)). If the trial justice disagrees with the verdict, "the motion will be denied if the trial justice determines that the evidence and the reasonable inferences drawn therefrom are so nearly balanced that reasonable individuals could differ." *Id.* (quoting *State v. DiCarlo*, 987 A.2d 867, 870 (R.I. 2010)).

The trial justice cited to her role as the "13th juror" in passing "independent judgment on the credibility of the witnesses and on the weight of the evidence." The trial justice first remarked on her concerns with DiPaola's credibility as a trial witness, especially given DiPaola's conflicting statements and "jumbled" version of events. The apartment building had two sets of stairs—one interior and one exterior. DiPaola's description of Withers' assault "troubled" the trial justice as DiPaola placed the assault on the interior stairwell, while she had referred to the location in the witness statement as occurring on the "outside stairs."

The trial justice also commented on the trial version of DiPaola's account of the incident, explaining that she found "the version [DiPaola] offered at trial" was "really difficult to understand logistically how it occurred." She suggested that the confusing aspect of DiPaola's testimony was how DiPaola could have been "thrown down the stairs" without "hit[ting] the body of the [d]efendant * * * [or] the walker," but rather, "she just went down the stairs." Referring to the housing court transcript, the trial justice also remarked that Barros testified in those proceedings that he found DiPaola on the floor inside the house "pretty upset." While questioning the portion of DiPaola's testimony describing how she fell, the trial justice did believe her when she testified that the police came quickly, which the trial justice found to be consistent with the testimony of Officer Auclair. The trial justice again referred to a transcript from housing court proceedings, where Barros testified that the incident occurred inside while he was outside.

- 6 -

Based on her disbelief of the sequence of events as relayed at trial, the trial justice concluded that she would have found that the state had failed to prove its case beyond a reasonable doubt. However, given the standard for a motion for a new trial, the trial justice proceeded to decide whether reasonable minds could have differed. The trial justice ultimately found that there was sufficient evidence, even after discrediting DiPaola's testimony that defendant committed an assault.[3] In making her determination, the trial justice relied on the testimony of Officer Auclair and Barros, both of whom she found credible. Officer Auclair recalled arriving on the scene soon after the incident and found DiPaola "shaking and crying" while she relayed that she had been pushed down the stairs and her arm was sore. Barros stated that he saw DiPaola on the floor, telling him to call the police because Withers had pushed her down the stairs.

After a close review of the record, we cannot conclude that the trial justice clearly erred or "overlook[ed] * * * material inconsistencies." *State v. Ferreira*, 21 A.3d 355, 366 (R.I. 2011). Even discounting DiPaola's testimony at trial, two other witnesses testified that they encountered DiPaola after the incident, visibly upset, and she told them Withers had pushed her—declarations a reasonable jury could have found to have been credible based on the circumstantial evidence presented at trial. Here, the trial justice found that the circumstantial evidence surrounding DiPaola's fall down the stairs was sufficient to overcome the confusing portion of her testimony regarding the incident. *See State v. Whitaker*, 79 A.3d 795, 804 (R.I. 2013) (upholding denial of

---

[3] A "simple assault [is] an 'unlawful attempt or offer, with force or violence, to do a corporal hurt to another, whether from malice or wantonness.'" *State v. Lomba*, 37 A.3d 615, 620 (R.I. 2012) (quoting *State v. Pope*, 414 A.2d 781, 788 (R.I. 1980)). Often charged with assault, a battery is "an act that was intended to cause, and does cause, an offensive contact with or unconsented touching of or trauma upon the body of another, thereby generally resulting in the consummation of the assault." *State v. Albanese*, 970 A.2d 1215, 1221 (R.I. 2009) (quoting *State v. Messa*, 594 A.2d 882, 884 (R.I. 1991)).

a motion for a new trial where the trial justice found numerous witnesses not credible, but still determined that the testimony was supported by circumstantial evidence). Affording the trial justice great deference in her determination, we conclude that Withers' assault of DiPaola is supported by the evidence. Therefore, after a close review of the lower court record and the trial justice's remarks, we are convinced that she did not err in denying defendant's motion for a new trial.

We affirm her denial of that motion.

**B**

**Sixth Amendment Right to Proceed without Counsel**

The defendant also argues that the trial justice erred in denying defendant the right to proceed *pro se* at trial. The state counters that defendant's request to represent herself on the second day of trial was untimely. It is not clear whether defendant expressly requested to proceed *pro se* at trial; but, in any event, we address defendant's argument now.

"[A] [s]tate may [not] constitutionally hale a person into its criminal courts and there force a lawyer upon him, even when he insists that he wants to conduct his own defense." *State v. Kennedy*, 586 A.2d 1089, 1091 (R.I. 1991) (quoting *Faretta v. California*, 422 U.S. 806, 807 (1975)). However, a defendant may proceed *pro se* if he or she wishes only so long as the waiver of his or her right to counsel is valid. *Cruz*, 109 A.3d at 390. A defendant's waiver must be made "voluntarily, knowingly, and intelligently." *Id.* First, the Court must determine whether the waiver was voluntary, and then the Court should proceed to decide whether it was "knowing and intelligent." *Id.* (quoting *State v. Laurence*, 848 A.2d 238, 253 (R.I. 2004)). Where a defendant is competent, we have articulated six factors that the trial justice may use as a

guide in reviewing a defendant's request under a totality of the circumstances approach.[4] *Id.* at 391. The factors are as follows:

> "(1) the background, the experience, and the conduct of the defendant at the hearing, including his age, his education, and his physical and mental health; (2) the extent to which the defendant has had prior contact with lawyers before the hearing; (3) the defendant's knowledge of the nature of the proceeding and the sentence that may potentially be [ ]imposed; (4) the question of whether standby counsel has been appointed and the extent to which he or she has aided the defendant before or at the hearing; (5) the question of whether the waiver of counsel was the result of mistreatment or coercion; and (6) the question of whether the defendant is trying to manipulate the events of the hearing." *State v. Chabot*, 682 A.2d 1377, 1380 (R.I. 1996).

The defense contends that the trial justice failed to determine whether Withers was knowingly, voluntarily, and intelligently waiving her right to counsel. We disagree. The trial justice explicitly referenced *Cruz*, 109 A.3d at 390, and cited the "voluntarily, knowingly, and intelligently" test. She expressed the test as follows: "When confronted with a purported waiver of counsel, the [c]ourt applies a two-prong analysis to determine the validity of the waiver. The [c]ourt first determines whether it was voluntary, and then whether it was knowing and intelligent. It must be all three. I have to examine the totality of the circumstances." Then, "[a] valid waiver of counsel is effective only if a defendant knows what he or she is doing, and his or her choice is made with eyes open. A criminal defendant certainly should be made aware of the dangers and disadvantages of self-representation."

---

[4] If there is a question of a defendant's mental competency, a trial justice *must* consider the six factors in deciding whether a defendant's waiver of his or her right to counsel is knowing, voluntary, and intelligent. *See Cruz*, 109 A.3d at 391. However, the trial justice need not explicitly apply these six factors when the mental competency of a defendant is not at issue. *Id.* at 392. Here, neither party addresses Withers' competency in their briefs, and the trial justice did not indicate any concern on the record regarding Withers' competency when she denied the defendant's request to proceed *pro se*; and so we assume defendant was competent and review the trial justice's decision accordingly.

In this case, the trial had already commenced when defendant expressed dissatisfaction with her lawyers. In fact, DiPaola had already testified, and her cross-examination had been completed by defense counsel. As the defense noted, the trial justice did refer to the timing of defendant's request in relation to the trial proceedings, noting also that defendant had been absent for one-and-one-half days of the trial after the jury was sworn. Although defendant voiced a number of excuses for her absence, the trial justice determined that her failure to show up to court was voluntary.

Additionally, defendant stated her desire to avoid the trial entirely:

> "And I still say my lawyers, they don't—they don't, um—they don't impress me. And I'm fine. Again, you wanted to do it. I'm going prepared to drop them, drop this whole court crap, because, okay, it's on the phone where I was. It's going to go to Supreme Court on you, like I said before. I want to go back to my cell.
> "* * *
> "I don't want to be here anymore. I spoke.
> "* * *
> "Leave me alone. I don't care. I don't care. Whatever. I don't care. I'm going to Supreme. I don't care. I don't care. You're fired. Leave me alone. Can I go back to my cell now?"

The trial justice also asked defendant to specify her issues with her counsel. The defendant expressed concern with defense counsel's jury selection because there were no African-American jurors. The trial justice attempted to explain to defendant that there had been no African Americans stricken from the jury because there were simply no African Americans selected—something beyond defense counsel's control.

The trial justice concluded that she did not believe defendant had "made the requisite intelligent and knowing decision to discharge counsel at this stage to meet the standard," and she gave the defense attorneys an opportunity to address the matter. Defense counsel represented

that they were prepared to continue defending Withers notwithstanding her request for them to withdraw. Subsequently, the trial justice denied Withers' request to discharge her attorneys.

We agree with the trial justice. The defendant's contentions regarding her counsel elucidated her lack of understanding of the jury selection process, which is evidence that defendant was not knowingly, intelligently, and voluntarily waiving her right to counsel. Put differently, defendant raised a complaint about her counsel that, had she represented herself, she could not have done better. *But see State v. Spencer*, 783 A.2d 413, 417-18 (R.I. 2001) (upholding a grant of a defendant's request to proceed *pro se* where the defendant explained that there were issues he wished to address with the witnesses that were important to his defense).

Furthermore, defendant had not been present for the testimony of key witnesses, including that of DiPaola. As such, her choice to represent herself *pro se* after a significant absence could certainly not be said to be knowing or intelligent where such nonattendance put her at a substantial disadvantage in completing the trial. *See Cruz,* 109 A.3d at 390 ("A valid waiver is effective only if a 'defendant knows what he [or she] is doing and his [or her] choice is made with eyes open.'" (quoting *Faretta*, 422 U.S. at 835)). It is inconceivable to us that defendant would knowingly put herself at such a disadvantage. Moreover, although the timing of defendant's midtrial request was not dispositive to the trial justice's analysis, as the defense suggests, it certainly indicates that defendant's waiver was not knowing or intelligent. *See Spencer*, 783 A.2d at 417 (acknowledging that the totality of the circumstances analysis used in determining whether a waiver is knowing, voluntary, and intelligent must be conducted "in light of the particular stage of the proceedings at the time the waiver is proposed"). Likewise, defendant's stated wish to abandon the trial altogether and "go back to [her] cell" demonstrates a

lack of understanding that firing her attorneys would still result in defendant's required appearance in court for the remainder of the trial.

Although we have expressed a preference for trial justices to have more than a brief discussion with a defendant before deciding whether a waiver of right to counsel is effective, the defendant's failure to attend the initial portion of the trial indicates that the defendant was not making a knowing and intelligent waiver of her constitutional rights. *See Cruz*, 109 A.3d at 393 ("[A]lthough an explicit *Chabot* discussion would have been preferable, the absence of such a colloquy does not infect [a] defendant's waiver of counsel with any constitutional defect."). In view of that, we find that the trial justice engaged in an appropriate inquiry with the defendant in order to establish whether her requested waiver of her right to counsel was voluntary, knowing, and intelligent.

**IV**

**Conclusion**

For the reasons stated herein, we affirm the judgment of the Superior Court. The record shall be returned to that tribunal.

## SUPREME COURT – CLERK'S OFFICE

## OPINION COVER SHEET

| | |
|---|---|
| **Title of Case** | State v. Tonya Withers. |
| **Case Number** | No. 2015-204-C.A.<br>(P3/14-809A) |
| **Date Opinion Filed** | November 21, 2017 |
| **Justices** | Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia, JJ. |
| **Written By** | Associate Justice Gilbert V. Indeglia |
| **Source of Appeal** | Providence County Superior Court |
| **Judicial Officer From Lower Court** | Associate Justice Netti C. Vogel |
| **Attorney(s) on Appeal** | For State:<br><br>Aaron L. Weisman<br>Department of Attorney General |
| | For Defendant:<br><br>Kara J. Maguire<br>Office of the Public Defender |